663 A.2d 790

COMMONWEALTH of Pennsylvania

v.

Rhonda JARVIS, Appellant.

Superior Court of Pennsylvania.

Submitted June 29, 1995.

Filed Aug. 24, 1995.

Aaron C. Finestone, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, P.J., and HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is a direct appeal from a judgment of sentence entered after a bench trial. We dismiss the appeal.

The Philadelphia police arrested appellant, Rhonda Jarvis, on April 19, 1993 and charged her with murder and abuse of corpse. These charges stemmed from the death of appellant's three year old daughter, Marissa Jarvis, whose corpse was thrown out a fifth floor hotel window. Appellant filed an omnibus pre-trial motion, and requested several continuances. On August 12, 1993, the Honorable Legrome D. Davis ordered a psychiatric examination for appellant. The defense filed a supplemental omnibus motion concerning a requested competency hearing, and the case was again continued. On November 3, 1993, the Honorable Lisa A. Richette found appellant incompetent to stand trial and ordered her committed to Norristown State Hospital for sixty days. Appellant was recommitted to Norristown several times. Finally, on July 20, 1994, Judge Richette determined that appellant was competent to stand trial.

On July 27, 1994, appellant waived her right to a jury trial and entered a plea of not guilty on all charges. After conducting a non-jury trial, Judge Richette found appellant guilty of involuntary manslaughter[1] and abuse of corpse.[2] The lower court has explained the facts underlying the convictions in the following manner:

> The defendant, a native of St. Louis, Missouri, arrived in Philadelphia in early April, 1993 from Milwaukee, Wisconsin where she had been staying with her sister. Accompanying her was her three year old daughter Marissa. She and the child checked into the Apollo Hotel at 1918 Arch Street, a five story structure. According to the manager of the hotel

1. 18 Pa.C.S.A. § 2502.
2. *Id.* at § 5510.

the defendant had checked in a day or two before the tragedy occurred and then left for Newark, New Jersey for a few days before returning.

At about 8:30 a.m. on April 17, 1993, the manager of the Apollo Hotel heard a loud sound; the awning of the building had collapsed and on the sidewalk lay the motionless body of Marissa Jarvis. Beside her was a small plastic toy which, according to Officer Virginia Pagano, [looked] as though it had flown out of the child's hand. Superficially, the scene was designed to represent an accidental fall.

However, the testimony of the medical examiner, Dr. Ian Hood, convincingly established a totally different scenario. The child had been dead *before* her body hit the sidewalk. She had suffered a serious skull fracture. There were dry abrasions on her left forehead and left eye. Her body temperature at the time she arrived in the emergency room was 87 degrees, indicating that she had been dead for several hours. The fracture to her skull had been caused by a severe impact to the back of her head. According to Dr. Hood, the surface her head struck was either a wall, [a] radiator, or a headboard of a bed. The injury caused a linear fracture to the brain stem and brain; a trauma that would inevitably cause death. Dr. Hood established conclusively via slides that the fall from the window did not contribute to Marissa's death.

When she was arrested, the defendant told police investigators that Marissa wet the bed; she then hit Marissa causing her to fall on the floor between the heater and an armchair. Unable to find a heart beat, the defendant decided to stage a fake accident by placing the child's body on the window sill with her toy and then pushing her out the window.

Trial court opinion filed February 24, 1995 at 3–5 (emphasis in original; citation to notes of testimony omitted).

After entering the guilty verdicts, the lower court ordered pre-sentence and mental health evaluations for appellant. On October 26, 1994, Judge Richette sentenced appellant to serve two and one-half (2½) to five (5) years imprisonment for

involuntary manslaughter with a consecutive term of one (1) to two (2) years incarceration for abuse of corpse. The lower court also committed appellant to Norristown State Hospital for ninety days. On January 26, 1995, the trial court ordered appellant to complete her sentence at the S.C.I. Muncy.[3]

Appellant filed a timely notice of appeal on October 27, 1994. She raises one issue for our consideration: "Did the Lower Court abuse its discretion in imposing maximum consecutive sentences for involuntary manslaughter ... and abuse of corpse ... where the sentences imposed were greater than the aggravated range of the Sentencing Guidelines, the Defendant had no prior criminal record, the Defendant completed what would have been a Guidelines sentence by the date of sentencing, and the Defendant needed mental health treatment?" Appellant acknowledges that this claim goes to the discretionary aspects of sentencing, not to the legality of the sentence.

As an initial matter, we note that appellant never filed a post-sentence motion requesting reconsideration/modification of sentence. The version of Rule of Criminal Procedure 1410 applicable to determinations of guilt which have occurred after January 1, 1994 does not dispense with the need to preserve challenges to the discretionary aspects of a sentence by means of such a motion. Although the new rule characterizes a motion to modify sentence as "optional," the rule plainly states that only issues which were *presented to the trial court* before or during trial shall be deemed preserved for appeal in the absence of a post-trial motion. Pa.R.Crim.P., Rule 1410B(1)(c), 42 Pa.C.S.A. The modifications to Rule 1410 have not altered the requirement of Rule of Appellate Procedure 302 which states that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P., Rule 302(a), 42 Pa.C.S.A. *See Commonwealth v. Krum,* 367 Pa.Super. 511, 513–15, 533 A.2d 134, 135–36 (1987) (*en banc* ) (issues not going to the legality of a sentence are waived if they have not been raised via oral or written motion

3. The transfer to Muncy was made conditional on appellant's medication being made available to her at the State Correctional Institution.

to modify sentence prior to appeal). Because appellant never provided the trial judge with the opportunity to reconsider or modify sentence, this issue is waived. Appellant may not challenge the discretionary aspects of her sentence for the first time on appeal.[4]

Appeal dismissed.

**4.** We are cognizant of the fact that defense counsel must have signified in some unspecified manner to the trial court that he disapproved of the sentence at issue here. At appellant's sentencing hearing, Judge Richette explained that she was going to impose the maximum term possible "despite [defense counsel's] objections." N.T. 10/26/95 at 3. However, the nature of counsel's disapproval and the form the "objections" took is not a matter of record in this case. We have meticulously scrutinized the certified record and find it devoid of any other indication that appellant found the sentence unacceptable until she lodged her notice of appeal with this court.

The Comment to Rule 1410 clearly states that issues raised at the sentencing proceeding need not, but may, be raised in a motion to modify sentence in order to preserve them for appeal. The Comment specifically cautions that counsel should carefully consider whether the record created at the sentencing proceeding is adequate for appellate review of the issues. *See* R.Crim.P., Rule 1410, 42 Pa.C.S.A., Comment (Miscellaneous) ¶ 6. It suffices to state that the record was inadequate in this case to preserve appellant's discretionary challenge.