675 A.2d 740

**COMMONWEALTH of Pennsylvania**

v.

**Jason TAPPER, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 29, 1996.

Filed April 29, 1996.

Christina A. King, Assistant Public Defender, Doylestown, for appellant.

Alan M. Rubenstein, District Attorney, Doylestown, for Com., appellee.

Before CIRILLO, President Judge Emeritus, and POPOVICH and OLSZEWSKI, JJ.

CIRILLO, President Judge Emeritus:

Jason Tapper appeals from a judgment of sentence entered in the Court of Common Pleas of Bucks County. We affirm.

Tapper was arrested for animal fighting, cruelty to animals, conspiracy, and related summary offenses. A jury trial commenced, and the following evidence was adduced. On July 3, 1994, Tapper, along with his friends/co-defendants Jan Pyatt and Roy Elliot, attended a barbecue party at the home of Mary Callahan in Warminster, Bucks County. Mary Callahan and her husband Pat, owners of a 6½ year old dalmatian named Duke, were selling their home and would not be permitted to take Duke to their new residence. They were, therefore, in search of a good home for their dog.

During the party, Tapper and Pyatt told Mrs. Callahan that they lived on a nearby farm with several acres and other animals, and would be willing to take Duke. Mrs. Callahan testified that, at the time, they seemed like nice young men and thought that, if they kept Duke, she would be close enough for visits with the dog. Mrs. Callahan warned the young men that Duke was not especially good with children, and specifically attested that she would allow Tapper and the others to "take [Duke] for the night on the condition that I would go up the next morning and check on him." Tapper and his cohorts agreed to this condition and, later in the afternoon, the three friends left the property with Duke and returned to the rental property shared by Tapper and Pyatt.

Denise Orsini visited Tapper's home on the evening of the picnic; she, too, had been at the Callahan's party. When Orsini asked how Duke was doing, Tapper told her that Duke had jumped out of the car and had run away. Orsini later phoned Mrs. Callahan to tell her of this development. Mrs. Callahan immediately called the police and went out with her husband that evening looking for Duke. The Callahans continued their search for Duke everyday for the next week, placing about 100 posters with information about the missing dog.

On July 10, 1994, Jeanette Rilling of the SPCA went to Tapper's home after reports were made regarding a foul odor

on the property. A badly decomposed body of a dead dalmatian dog was found in the field and was later identified as Duke. Tapper then admitted to killing Duke, claiming that Duke had attacked him and he was forced to kill the dog with cinder blocks.

An investigation ensued. Mike Cardell, a friend of Tapper's, testified that he visited Tapper's home the evening of the picnic, and that Tapper, Pyatt, Elliot, Duke and a pit bull dog went out to a field adjacent to the house. Nearly a half an hour went by before the group returned to the house; Duke was not with them. Cardell testified that Tapper returned holding a dog tail, a razor blade, and duct tape.

Brian Hattrich, who shared the house with Tapper, testified that ten minutes after the group went into the field that night he heard a dog whimpering. When Tapper returned to the house, he told Hattrich that he had cut Duke's ears off. Hattrich also testified that Tapper returned holding a dog tail. Co-defendant Pyatt told Hattrich that the friends had returned from the party with a dog, tied it to a tree in the field, and taped the dog's mouth shut. Pyatt also told Hattrich that his pit bull was allowed to attack Duke, and that the pit bull had actually pinned Duke.

Dr. Charles Malinauskas, a veterinarian, testified that Duke's injuries included a severed tail, throat, and ears, and multiple skull, rib, and jaw fractures. Dr. Malinauskas opined that the tail and ears were cut off while Duke was alive.

Tapper was convicted of animal fighting, cruelty to animals, and conspiracy. He was sentenced to 18 to 36 months imprisonment. This appeal followed.

Tapper raises two issues for our consideration:

(1) Was the verdict against the weight of the evidence in that the evidence clearly establishes that the appellant was the owner of the animal?

(2) Was the verdict against the sufficiency of the evidence in that the Commonwealth failed to establish that the appellant was not the owner of the animal?

 Tapper has raised the issue of the weight of the evidence for the first time on appeal. He chose not to file optional post-sentence motions pursuant to Pa.R.Crim.P. 1410, but, rather, filed a notice of appeal after sentence was imposed. The trial court, therefore, was not given an opportunity to exercise its discretion regarding whether Tapper should be awarded a new trial on the grounds that the verdict was against the weight of the evidence. In light of these facts, the Commonwealth argues that Tapper is barred from challenging the weight of the evidence. The recent law on this subject can be summarized as follows:

In *Commonwealth v. Brown*, 538 Pa. 410, 434–438, 648 A.2d 1177, 1189–1191 (1994), the Pennsylvania Supreme Court made clear that challenges to the weight of the evidence must first be presented to the trial court. An appellate court may only review the trial court's exercise of discretion in granting or denying a new trial on grounds that the verdict was contrary to the weight of the evidence; it may not address "the underlying question whether the verdict is against the weight of the evidence." *Id.* at 435, 648 A.2d at 1189. In so holding, the Supreme Court observed that: 'An allegation that the verdict is against the "weight" of the evidence is a matter to be resolved by the trial court:

While there may be some legitimacy for a trial court, who [sic] has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying upon a cold record, to exercise such a function.

*Commonwealth v. Farquharson*, 467 Pa. 50, 59–60, 354 A.2d 545, 550 (1976).'

*Id.* at 437, 648 A.2d at 1190, quoting *Commonwealth v. Karkaria*, 533 Pa. 412, 418–419 n. 3, 625 A.2d 1167, 1170 n. 3 (1993). The court in *Brown* further declared that:

'Unlike the challenge of legal sufficiency of the evidence, the complaint that the verdict was against the weight of the evidence requires an assessment of the credibility of the testimony offered by the Commonwealth. It is a rule

of the Commonwealth that an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record." '

*Commonwealth v. Brown, supra* at 438, 648 A.2d at 1191, quoting *Commonwealth v. Nelson,* 514 Pa. 262, 271 n. 3, 523 A.2d 728, 733 n. 3 (1987), *cert. denied,* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987) (citations omitted).

*Commonwealth v. Widmer,* 446 Pa.Super. 408, 420, 667 A.2d 215, 220–21 (1995) (quoting *Commonwealth v. Hodge,* 441 Pa.Super. 653, 659–61, 658 A.2d 386, 389 (1995) (footnote omitted)).

In light of *Brown, Widmer,* and *Hodge,* we are precluded from addressing Tapper's first issue. By way of further explanation, this court has unequivocally stated:

[T]his Court cannot entertain, in the first instance, a request for a new trial on the grounds that the verdict was contrary to the weight of the evidence. This is not an issue of waiver. Even though, as a general rule, a defendant need not file a post-sentence motion in order to preserve issues for appellate review, a weight of the evidence argument may be addressed only by a trial court. Therefore, a defendant, who wishes to seek a new trial on grounds that the verdict was contrary to the weight of the evidence, must necessarily raise this issue via post-sentence motion in the trial court. If the trial court denies the motion, the defendant may then file an appeal in which the trial court's exercise of discretion will be subject to review.

*Widmer,* 446 Pa.Super. at 420, 667 A.2d at 221 (quoting *Hodge,* 441 Pa.Super. at 659–61, 658 A.2d at 389 (footnote omitted)). While Tapper acknowledges in his appellate brief that he is cognizant of this court's ruling in *Hodge,* he nonetheless argues that we should address this issue. Specifically, he claims that present counsel was assigned to represent him fourteen days after sentencing, subsequent to the permitted time for filing post-sentence motions. We reject Tapper's argument, as it in no way alters the fact that we cannot entertain a weight of the evidence challenge that has not been

addressed by the trial court. *Brown, supra; Widmer, supra; Hodge, supra.*

■ Tapper next claims that the evidence was insufficient to sustain the verdict. In reviewing a sufficiency of the evidence claim, an appellate court must determine whether the evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict winner, was sufficient to enable the fact finder to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. LaCava*, 542 Pa. 160, 171, 666 A.2d 221, 226 (1995); *Commonwealth v. Thomas*, 527 Pa. 511, 513–514, 594 A.2d 300, 301 (1991).

Specifically, Tapper challenges his conviction for cruelty to animals pursuant to 18 Pa.C.S.A. § 5511(a)(1)(i), which provides, "[a] person commits a misdemeanor of the second degree if he willfully and maliciously: Kills, maims or disfigures any domestic animal of another person...." (emphasis added).[1] Tapper argues that the Commonwealth failed to establish that Duke belonged to "another person;" rather, Tapper claims that he was Duke's owner, as Mrs. Callahan gave the dog to Tapper on the day of the picnic. We disagree.

■ We have little difficulty in finding that Mrs. Callahan was Duke's owner at the time of the killing. Mrs. Callahan permitted Duke to spend the evening with Tapper contingent upon her inspection of the dog and the premises the following day. Upon learning of Duke's disappearance, Mrs. Callahan immediately began a search for the dog that lasted until his body was found, one week later. Further, during cross-examination, Mrs. Callahan reiterated the fact that there was a condition attached to allowing Tapper to permanently keep Duke. She also testified that upon hearing of Duke's disappearance she thought: "[W]hen I get [Duke] back, he's not going back to them." Additionally, Mrs. Callahan was asked by defense counsel if the reason for her crying when she gave Duke to Tapper was because she knew Duke would no longer

---

1. We note that Tapper's sufficiency of the evidence complaints do not apply to the felony animal fighting convictions. A defendant need not be the owner of an animal pursuant to 18 Pa.C.S.A. § 5511(h.1).

be living with her. She answered: "Well, if it worked out, I knew that he [Duke] wouldn't be." (emphasis added).

Mrs. Callahan's visit to Tapper's home, the condition agreed upon between Mrs. Callahan and Tapper, had never occurred; thus, Mrs. Callahan never relinquished ownership of Duke. Viewing the evidence in the light most favorable to the Commonwealth, we find that the elements of cruelty to animals have been proven beyond a reasonable doubt, *LaCava, supra;* the evidence was clearly sufficient to sustain the verdict.

Affirmed.