683 A.2d 1236

**COMMONWEALTH of Pennsylvania**

v.

**Rodney Darryl CLINTON, Appellant.**

Superior Court of Pennsylvania.

Submitted July 29, 1996.

Filed Oct. 29, 1996.

386

Mitchell A. Kaufman, Assistant Public Defender, Pittsburgh, for appellant.

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before TAMILIA, POPOVICH and JOHNSON, JJ.

JOHNSON, Judge:

Rodney Darryl Clinton appeals the judgment of sentence imposed following his conviction on two counts of aggravated assault, one count of violating the Uniform Firearms Act and one count of reckless endangerment of another person. We affirm.

On the evening of December 10, 1994, Charles Jacobs and two friends celebrated Jacobs's sixteenth birthday by attending a party and consuming alcoholic beverages. During the course of the night, Jacobs unexpectedly met his friend Rodney Clinton on a street in the East Hills section of Pittsburgh. Clinton and Jacobs engaged in a discussion about football teams. Their discussion grew into a heated argument which escalated into a physical altercation. N.T., dated July 31 and August 1, 1995, at 30–31. Approximately five to ten minutes after their altercation ended, Jacobs was shot in the abdomen.

Shortly after the shooting, police officers Patrick Harlan and Chris Moran arrived at the scene of the crime. They observed Jacobs lying on the ground, repeatedly saying, "He

shot me, he shot me." *Id.* at 68–69. Jacobs was then rushed to the hospital, where he underwent surgery.

The day after his surgery, Jacobs disclosed to his mother that Clinton had shot him. That same night, Jacobs also told Officer Elton Keady, a police officer investigating the shooting, that Clinton was his assailant. Several days later, Jacobs identified Clinton from an array of photographs shown to him by Detective George Ciganik and told Ciganik that Clinton had shot him. Jacobs also told Ciganik that Clinton had visited him in the hospital the previous day to apologize for shooting him in the stomach.

Clinton was arrested and charged with aggravated assault, violating the Uniform Firearms Act, and recklessly endangering another person. At Clinton's preliminary hearing, Jacobs testified that Clinton was his assailant. *Id.* at 34–35. Jacobs further testified that immediately before the shooting he saw Clinton hold a gun and fire it at him. *Id.* at 35–36.

At trial, Jacobs altered his story. He testified that Clinton did not shoot him and that he did not know the identity of his assailant. *Id.* at 33. He explained that his earlier statements blaming Clinton stemmed from his anger at being shot and his lingering bitterness toward Clinton because of their physical altercation. *Id.* at 41–42.

Clinton was convicted on all four counts. He was sentenced to an aggregate penalty of seven to twenty years' imprisonment. This appeal followed.

■ Initially, we note that Clinton has failed to include in his brief a statement of the questions involved as required by Pennsylvania Rules of Appellate Procedure 2111 and 2116. Issues not presented in the statement of questions involved are generally deemed waived. Pa.R.A.P. 2116; *Harkins v. Calumet Realty Co.,* 418 Pa.Super. 405, 412, 614 A.2d 699, 703 (1992); *Commonwealth v. Maris,* 427 Pa.Super. 566, 569, 629 A.2d 1014, 1015–16 (1993). The court may overlook this defect, however, when an appellant raises the questions involved in some other portion of his brief. *Larson v. Diveglia,* 449 Pa.Super. 545 n. 1, 674 A.2d 728 n. 1, *allocatur granted,*

545 Pa. 680, 682 A.2d 310 (1996); *Savoy v. Savoy*, 433 Pa.Super. 549, 553, 641 A.2d 596, 598 (1994) (stating that when "failure to comply with our Rules of Appellate Procedure does not impede our ability to review the issues, we will address the merits."). Here, Clinton has clearly raised three issues in the summary of argument and argument sections of his brief. Clinton's violation of the Rules of Appellate Procedure, therefore, does not bar us from reviewing those issues. *See Savoy, supra,* at 553, 641 A.2d at 598.

■ Clinton's first argument is that the verdict is against the weight of the evidence. We conclude that Clinton has waived this argument by not filing post-sentence motions. *Commonwealth v. Holmes,* 444 Pa.Super. 257, 262, 663 A.2d 771, 774 (1995).

■ The 1994 amendments to Pa.R.Crim.P. 1410 generally give defendants the option of filing post-sentence motions or appealing directly to the Superior Court. While the purpose of these amendments was to make post-trial motions optional, our cases establish that a defendant must always file a post-sentence motion in order to preserve a claim assailing a verdict as against the weight of the evidence. *E.g., Commonwealth v. Robinson,* 450 Pa.Super. 428, 430–32, 676 A.2d 249, 250 (1996); *Commonwealth v. Tapper,* 450 Pa.Super. 220, 223–25, 675 A.2d 740, 742–43 (1995); *Commonwealth v. Widmer,* 446 Pa.Super. 408, 420–21, 667 A.2d 215, 221 (1995). The reason for this "exception" to Rule 1410 is our narrow scope of review for weight of the evidence challenges:

An appellate court may only review the trial court's exercise of discretion in granting or denying a new trial on the grounds that the verdict was contrary to the weight of the evidence; it may not address "the underlying question whether the verdict is against the weight of the evidence."

*Commonwealth v. Hodge,* 441 Pa.Super. 653, 659, 658 A.2d 386, 389 (1995), quoting *Commonwealth v. Brown,* 538 Pa. 410, 436, 648 A.2d 1177, 1189 (1994). Unless a defendant files a post-sentence motion, the trial court does not have the opportunity to exercise its discretion to grant or deny the motion for

a new trial. If the trial court does not exercise its discretion, then there is no issue for an appellate court to review. *Widmer, supra,* at 420–21, 667 A.2d at 221.

■ That the trial court addressed the weight of the evidence issue in its Rule 1925 opinion is not sufficient to preserve this issue for appellate review. *Id.* When a trial court prepares a Rule 1925 opinion, it *no longer* has the jurisdiction to grant or deny a defendant's motion for a new trial. *Id.* Rather, the court can only explain its trial and post-trial actions in the Rule 1925 opinion. We cannot, therefore, address Clinton's weight of the evidence claim.

■ Clinton next argues that the trial court based his sentence on inappropriate factors. We conclude that Clinton has also waived this argument by failing to challenge his sentence in the trial court.

In *Commonwealth v. Jarvis,* 444 Pa.Super. 295, 663 A.2d 790 (1995), we held that challenges to the discretionary aspects of one's sentence not raised before the trial court could not be raised on appeal. We concluded that the new version of Rule 1410

> does not dispense with the need to preserve challenges to the discretionary aspects of a sentence by means of … a motion [for modification of sentence]. Although the new rule characterizes a motion to modify a sentence as "optional," the rule plainly states that only issues *which were presented to the trial court* before or during trial shall be deemed preserved for appeal in the absence of a post-trial motion. The modifications to Rule 1410 have not altered the requirement of Rule of Appellate Procedure 302 which states that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."

*Id.* at 298, 663 A.2d at 791–92 (citations omitted). We also noted that a defendant could preserve such a claim by raising the challenge at the sentencing proceeding as long as the record of the sentencing proceeding was sufficient to allow appellate review. *Id.* at 299 n. 4, 663 A.2d at 792 n. 4.

In *Commonwealth v. Egan,* 451 Pa.Super. 219, 679 A.2d 237 (1996), however, we held that we could review a challenge to a sentence on the ground that the trial court failed to state the reasons for imposing the sentence on the record, regardless of whether the appellant raised this claim in the lower court. *Id.* at 223–24, 679 A.2d at 239. We concluded that we could review the type of claim raised in *Egan,* even though it was not raised in the trial court, because our ability to determine whether the trial court placed its reasons for imposing a sentence on the record did not depend on our reviewing the exercise of discretion by the trial court, but rather merely required us to examine the sentencing transcript. *Id.* at 224, 679 A.2d at 239. Thus, reviewing such claims for the first time on appeal did not involve our encroaching upon "any . . . matter uniquely within the province of the trial court." *Id.*

■ In this case, Clinton alleges that the sentencing court erred by taking into account: (1) various aggravating factors which do not support an aggravated range sentence; and (2) the nature of the crime. The factors that Clinton complains of bear on the exercise of discretion by the trial court in choosing what sentence to impose and thus are unlike the challenge in *Egan.* Clinton did not raise this claim before the trial court, either in post-sentence motions or at the sentencing proceeding. Because Clinton did not give the court the opportunity to reconsider the imposition of this sentence, we hold that Clinton has waived this claim. *See Jarvis, supra,* at 298–99, 663 A.2d at 791–92. We note further that, even had Clinton not waived this claim, we still would not reach the merits of his challenge because his concise statement of matters relied upon for allowance of appeal contains only mere generalizations, rather than "specific, articulable reasons why h[is] sentence raises doubts that the sentencing scheme as a whole has been compromised." *Commonwealth v. Williams,* 386 Pa.Super. 322, 326, 562 A.2d 1385, 1388 (1989) (en banc).

■ Clinton's next contention is that the trial court's jury charge misled and confused the jury. Our standard of

review for challenged jury instructions is clear: "A jury charge by the trial court shall be evaluated on the basis of the entire charge and not on separate, discrete portions...." *Commonwealth v. Saranchak*, 544 Pa. 158, 174, 675 A.2d 268, 276 (1996); *accord Commonwealth v. Prosdocimo*, 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990). "The charge must clearly and completely advise the jury of the law as it pertains to their resolution of the case before them." *Commonwealth v. Thompson*, 543 Pa. 634, 645, 674 A.2d 217, 223 (1996). The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instructions accurately convey the applicable law. *Saranchak, supra*, at 174, 675 A.2d at 276. Under this standard, we will not "find[ ] reversible error for every technical inaccuracy, but ... [will] evaluate[ ] whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." *Prosdocimo, supra*, at 154, 578 A.2d at 1276; *accord Saranchak, supra*, at 174, 675 A.2d at 276.

Clinton asks us to focus on isolated portions of the court's jury charge, that he claims misled and confused the jury. Our review of the charge in its entirety, however, leads us to conclude that the trial court accurately and clearly conveyed the applicable law. We will, however, review each of Clinton's alleged errors.

 First, Clinton claims that the court erred in giving the jury instructions on the use of Jacobs's prior inconsistent statements. The court stated that only the inconsistent statements made under oath at a formal proceeding could be considered as substantive evidence. N.T., *supra*, at 107. The court then told the jury that it could consider for impeachment purposes only the inconsistent statements Jacobs made "to his mother, the statement of [sic] Officer Ciganik, [and] the statement to the *officer at the scene.*" *Id.* (emphasis added). Clinton claims that the phrase "officer at the scene" is ambiguous because there was more than one officer at the scene of the shooting. We find that this instruction, however, was not ambiguous. The record shows that Detective Ciganik and Officer Moran were the only two police officers at the scene of

the shooting who also testified at the trial. *Id.* at 62, 66–69. Because the trial court referred to Detective Ciganik by name, there was no ambiguity in the reference to Officer Moran as the "officer at the scene."

 Clinton next argues that the trial court's categorization of Jacobs's comment that "he shot me" as a prior inconsistent statement improperly implied that Jacobs was referring to Clinton. Clinton is incorrect because Jacobs's statement was inconsistent with his trial testimony that he did not know who his attacker was. The trial court did not err in instructing the jury to consider that statement made immediately after the shooting in deciding whether to believe Jacobs's trial testimony that he did not know the identity of his assailant.

Next, Clinton complains that the following instruction regarding Jacobs's credibility was confusing and erroneous:

> You determine whether he initially accurately identified the defendant as the man who shot him and then over a period of time decided for whatever reasons to change his testimony. He was truthful when he spoke to his mother in the hospital, to the officers and at the time of the preliminary hearing and now for some reason is not telling the truth or whether, as he said, I was angry at the defendant and I decided to blame him for it because we were arguing. So he really doesn't know who shot him. In evaluating those statements, consider life as you know it and have experienced it, consider his maturity.... You know that this is not a case of strangers drinking but of a kid drinking, arguing. Consider all of these things in evaluating his testimony.

*Id.* at 109.

 Clinton argues that we should read isolated portions of this statement out of context and conclude that this instruction was confusing and misleading. When we read the identified portions in the context of the jury charge as a whole, however, we conclude that the jury was clearly and accurately instructed on what factors to consider in evaluating the two

conflicting statements of Jacobs regarding the identity of his attacker.

 Clinton next contends that the court's statement regarding conflicting evidence, "If you find conflicts in the testimony, clearly you must find conflicts in this case," *id.* at 110, was confusing to the jury. Again, however, Clinton has isolated a portion of the jury charge out of context and argued that it constitutes reversible error. In the sentence immediately following the one identified by Clinton, the trial court went on to explain: "You have one statement under oath and then another statement under oath and they don't agree. You must first try to resolve these conflicts and decide why these statements are in variance to the extent that you are able to do so. If you can't resolve them, then you must determine which statements you do believe and which statements you don't believe." *Id.* at 110–11. Again, we find that this instruction, considered in relation to the charge as a whole, accurately and clearly guided the jury on how to resolve conflicting testimony.

Finally, Clinton argues that the court's instruction regarding the first count of assault was in error. The court stated:

> The first count of aggravated assault is defined as follows: There are *three* elements.
>
> That the defendant caused serious bodily injury to Charles Jacobs.
>
> Two, that the defendant acted intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. . . .
>
> Once again, the first count has *two* elements.

*Id.* at 113–14 (emphasis added).

 After review, we conclude that this instruction regarding aggravated assault clearly and accurately apprised the jury of the law regarding this offense. The court accurately described the two elements of the crime in language that the jury could easily understand. We will not reverse because the court initially made an erroneous statement that

there were three elements to this offense. *See Prosdocimo, supra*, at 154, 578 A.2d at 1276 ("We will not ... find[ ] reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision.").

Judgment of sentence **AFFIRMED**.