J-S05007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERT LABOY ARROYO | : | |
| | : | |
| Appellant | : | No. 527 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 10, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004471-2018

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                      **FILED MAY 21, 2020**

Appellant, Albert Laboy Arroyo, appeals from the judgment of sentence

entered following his conviction of aggravated assault.[1]  We affirm.

The trial court summarized the history of this case as follows:

> Carlos Lara, [Appellant's] next-door neighbor, testified that
> on August 4, 2018 at approximately 6:00 p.m., he was sitting on
> his porch playing music.  [Bench Trial, January 10, 2019, Notes of
> Testimony, pp. 8-10].  He had just come home from work and had
> consumed a couple of beers.  [N.T., 1-10-19, p. 20].  [Appellant]
> started to play his own music next door, and the two men
> exchanged words.  Mr. Lara testified that [Appellant] told him to
> "get in the street" so that the two men could fight physically.  Mr.
> Lara suggested they go inside to fight, so he went down the stairs
> and turned down a shared walkway to open his door, and at that
> point felt something hit his head from behind.  [N.T., 1-10-19, pp.
> 11-13].  Mr. Lara described his injury as feeling very "hot" and
> painful, and he tried to stop the bleeding with a towel.  Prior to
> being struck, he recalled [Appellant] telling [Appellant's] brother,
> who was also present, that "with this hit I'm gonna leave him

---

[1] 18 Pa.C.S. § 2702(a)(1).

blind." [N.T., 1-10-19, p. 33]. Mr. Lara was taken by ambulance to the hospital, where he received staples and stitches. He does not recall losing consciousness, but felt very weak and dizzy. Mr. Lara was out of work for approximately one month and testified that his vision is still blurry. [N.T., 1-10-19, pp. 12-18, 23].

Officer Stephen Marte of the Harrisburg City Police Department testified that when he arrived at Mr. Lara's residence on the evening in question, the ambulance was already on location. He observed Mr. Lara getting loaded into the ambulance and there was a pool of blood on the porch and a towel around Mr. Lara's head with a lot of blood on it. [N.T., 1-10-19, p. 35-36]. He also noted a blood trail in the alleyway. [N.T., 1-10-19, p. 38]. Officer Marte spent a very short time with Mr. Lara before he was taken to the hospital, and was able to question him about who did this. Mr. Lara responded that it was his neighbor. Officer Marte knocked on [Appellant's] door with no answer, and observed a broken piece of what looked like a cane, which he left at the scene as it had no blood on it. [N.T., 1-10-19, p. 38]. When Officer Marte arrived at the hospital, Mr. Lara was in bed, was not able to speak, and was wearing a neck brace and a wrap around his head. |N.T., 1-10-19, p. 39].

Officer Marte called [Appellant's] residence and identified himself as an officer investigating a potential assault, and that he would like to speak to him. [Appellant] agreed to talk to him and they met on [Appellant's] porch. Officer Marte *Mirandized* him and asked if he was still willing to talk. [Appellant] explained that he was defending his little brother on the evening in question - that Mr. Lara was insulting his brother and an argument ensued. [Appellant] admitted to Officer Marte that he picked up a stick and struck Mr. Lara with it. [N.T., 1-10-19, pp. 41-42]. [Appellant] also claimed to have gotten rid of the stick. [N.T., 1-10-19, p. 42]. Officer Marte observed photographs (Commonwealth's exhibits 1 through 16) and testified that they reflected an accurate depiction of the injuries sustained to Mr. Lara's head. [N.T., 1-10-19, pp. 47-48].

[Appellant] testified at trial, and denied having been involved in the assault. Specifically, he stated that on the day in question he had been in the hospital all day, where he was being treated for dehydration. He got home at around 6:30 and, while his mom was preparing dinner, they heard an argument outside. Upon stepping outside, [Appellant] saw … Mr. Lara laying on the

floor.[2]  [Appellant] testified that they tried picking him up, but he started screaming so they let him go and Mr. Lara left.  [N.T., 1-10-19, pp. 51-52].  [Appellant] stated that Officer Marte contacted him about his next-door neighbor and he agreed to meet with him.  [Appellant] testified that he told Officer Marte that some argument went down with his next door neighbor and, before anything else was said, Officer Marte put handcuffs on him and told him it was for the safety of both of them.  [Appellant] said he was booked after that and was never *Mirandized*.  [N.T., 1-10-19, pp. 53-55].

Trial Court Opinion, 6/25/19, at 1-3.

In an information filed on November 8, 2018, Appellant was charged with one count of aggravated assault.  On January 10, 2019, at the conclusion of a nonjury trial, Appellant was convicted of the sole criminal charge, and the trial court immediately sentenced Appellant to serve a term of incarceration of eight to twenty years.  Appellant filed a timely post-sentence motion challenging the discretionary aspects of sentencing, which was denied on March 7, 2019.  This timely appeal followed.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. WAS NOT THE EVIDENCE INSUFFICIENT TO SUSTAIN A CONVICTION FOR AGGRAVATED ASSAULT UNDER 18 Pa.C.S. §2702(a)(1) WHEN THE COMPLAINANT DID NOT SUFFER SERIOUS BODILY INJURY AND WHEN THE EVIDENCE WAS INSUFFICIENT TO SHOW THAT [APPELLANT] ATTEMPTED TO CAUSE SERIOUS BODILY INJURY?

II. DID NOT THE COURT ABUSE ITS DISCRETION IN IMPOSING A JAIL SENTENCE OF 8 YEARS TO 20 YEARS BECAUSE:

---

[2] Contrary to his confession to the police, Appellant alleged that Mr. Lara had fallen in a drunken stupor, which caused his injuries.  N.T., 1/10/19, at 52.

- 3 -

(A) THE COURT IMPROPERLY APPLIED THE "DEADLY-WEAPON-USED" ENHANCEMENT OF THE SENTENCING GUIDELINES AND IMPROPERLY ASSIGNED AN OFFENSE GRAVITY SCORE OF 11; AND

(B) THE IMPOSITION OF A SENTENCE OF 8 TO 20 YEARS WAS CLEARLY UNREASONABLE, SO MANIFESTLY EXCESSIVE AS TO CONSTITUTE AN ABUSE OF DISCRETION, AND INCONSISTENT WITH THE PROTECTION OF THE PUBLIC, THE GRAVITY OF THE OFFENSES, AND [APPELLANT'S] REHABILITATIVE NEEDS?

Appellant's Brief at 5 (capitalization in original).

Appellant first argues that there was insufficient evidence to support his conviction of aggravated assault. Appellant's Brief at 19-31. Initially, Appellant contends that the Commonwealth failed to present evidence that the complainant sustained serious bodily injury. *Id*. at 22-29. Appellant claims that the evidence was "at most" sufficient to prove that he caused "bodily injury." *Id*. at 22. In addition, Appellant asserts that the Commonwealth failed to establish that Appellant attempted to cause serious bodily injury to the victim. *Id*. at 29-31.

Our standard of review is well established:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

- 4 -

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

Aggravated assault is defined in the crimes code, in relevant part, as follows:

**§ 2702. Aggravated assault.**

**(a) Offense defined. —**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702(a)(1). Serious bodily injury is defined as "**bodily injury which creates a** substantial risk of death or which causes serious, permanent disfigurement, or **protracted loss or impairment of the function of any bodily member or organ.**" 18 Pa.C.S. § 2301 (emphases added).

In determining that Appellant's challenge to the sufficiency of the evidence lacked merit, the trial court offered the following conclusion:

As recognized by the [trial court as] fact-finder, Mr. Lara was the victim of a surprise blow to the head from behind, by an instrument that caused serious bodily injury. [Mr. Lara's] bleeding was excessive, he needed staples in his head, and his testimony reflects on-going issues with his vision. Viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence of record to sustain [Appellant's] conviction for aggravated assault.

- 5 -

Trial Court Opinion, 6/25/19, at 7.

Our review of the record reflects that Mr. Lara testified that during an altercation with Appellant, he was struck on the head from behind. N.T.,1/10/19, at 12-14. Mr. Lara explained that he was taken to the hospital by ambulance, where he received staples and stitches to the crown of his head. *Id*. at 15-16. In addition, Mr. Lara stated at trial that his vision remains blurry. *Id*. at 15.

Under the totality of the circumstances, the evidence presented at the trial on January 10, 2019, viewed in the light most favorable to the Commonwealth as the verdict winner, established that Mr. Lara was struck on the head on August 4, 2018, and required medical attention. At Appellant's trial five months later, Mr. Lara expressed that his vision remains blurry. This supports the fact finder's conclusion that Mr. Lara has suffered a protracted loss or impairment of the function of any bodily member or organ, which satisfies the definition of a serious bodily injury beyond a reasonable doubt. 18 Pa.C.S. § 2301. Hence, Appellant's contrary claim fails.

In light of the fact that the Commonwealth established that Mr. Lara suffered a serious bodily injury, we need not address Appellant's alternate claim that the Commonwealth failed to prove that Appellant attempted to cause serious bodily injury to Mr. Lara. *See* Appellant's Brief at 29-31. Accordingly, Appellant's claim that the Commonwealth failed to present sufficient evidence to support his conviction of aggravated assault lacks merit.

In his second issue, Appellant argues that the trial court abused its discretion in imposing his sentence. Appellant's Brief at 32-36. Appellant presents a two-fold claim. First, he contends that the trial court improperly applied the deadly-weapon-used enhancement and incorrectly calculated his offense gravity score.[3] *Id*. at 32-34. Next, Appellant asserts that his sentence was manifestly excessive and inconsistent with sentencing factors. *Id*. at 34-36.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

---

[3] We observe that a "misapplication of the Sentencing Guidelines constitutes a challenge to the discretionary aspects of sentence." *Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa. Super. 1998) (*en banc*). Thus, this Court has regarded challenges to the application of the deadly weapon enhancement in the Sentencing Guidelines as challenges to the discretionary aspects of the sentence. *See Commonwealth v. Rhoades*, 8 A.3d 912, 915-916 (Pa. Super. 2010) (treating allegation that the trial court erred in applying the deadly weapon enhancement as a challenge to the discretionary aspects of sentencing). Likewise, the calculation of an offense gravity score implicates the discretionary aspects of sentencing. *Commonwealth v. Sunealitis*, 153 A.3d 414, 421 (Pa. Super. 2016) (quoting *Archer*, 722 A.2d at 210-211) (addressing claim that the trial court erred in calculating offense gravity score as a challenge to the discretionary aspects of sentencing). Accordingly, a challenge to the application of the deadly weapon enhancement and a challenge to the calculation of the offense gravity score cannot be appealed as a matter of right and are subject to waiver. *Archer*, 722 A.2d at 210-211.

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Pennsylvania Rule of Appellate Procedure 302(a) provides that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Moury*, 992 A.2d at 170 (citing *Commonwealth v. Mann*, 820 A.2d 788 (Pa. Super. 2003)).

In *Commonwealth v. Reeves*, 778 A.2d 691 (Pa. Super. 2001), we reaffirmed the principle articulated in *Commonwealth v. Jarvis*, 663 A.2d 790 (Pa. Super. 1995), wherein this Court observed that, although Pa.R.Crim.P. 1410 (presently Rule 720) characterizes post-sentence motions as optional, the rule expressly provides that only issues raised in the trial court will be deemed preserved for appellate review. Applying this principle, the *Reeves* Court held that an objection to a discretionary aspect of a sentence is waived if not raised in a post-sentence motion or during the sentencing proceedings. *Reeves*, 778 A.2d at 692-693; *see also Commonwealth v. Parker*, 847 A.2d 745, 752 (Pa. Super. 2004) (holding challenge to

discretionary aspect of sentence was waived because appellant did not object at sentencing hearing or file post-sentence motion).

Moreover, concerning the fourth part of our analysis, the question of whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id*.

Herein, the first requirement of the four-part test is met because Appellant brought a timely appeal. However, our review of the record reflects that Appellant did not fully meet the second requirement because he did not raise all of the instant challenges to the discretionary aspects of his sentence in a post-sentence motion or at the time of sentencing. Specifically, in his post-sentence motion, Appellant sought only a modification of the sentence, which he claimed was excessive and unreasonable in light of his rehabilitative needs.[4] Post-Sentence Motion, 1/22/19 at 2. Likewise, Appellant challenged

---

[4] In his post-sentence motion, Appellant presented the following argument in an effort to achieve reconsideration of his sentence:

9. Although the sentence was within the sentencing guidelines, a court may abuse its discretion in imposing such sentence if "the

the application of the deadly weapon used enhancement at the time of sentencing.  N.T. (Sentencing), 1/10/19, at 2.  Because these are the only issues raised in the trial court, they are the only claims preserved for our review.  To the extent that Appellant presents another issue attempting to challenge the discretionary aspect of sentencing, *i.e.* the calculation of his offense gravity score, such claim is waived due to Appellant's failure to present it at the time of sentencing or in his post-sentence motion.  ***Reeves***, 778 A.2d at 692-693.  Thus, Appellant met the second part of the test only with regard to his claims that the trial court abused its discretion in applying the deadly weapon enhancement and in fashioning an excessive and unreasonable sentence in light of his rehabilitative needs.

With regard to the third requirement, we observe that Appellant included in his appellate brief the necessary concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f).  Therefore, we next determine whether Appellant raises a substantial question requiring

_____

case involves circumstances where the application of the guidelines would be clearly unreasonable."  42 Pa.C.S. §9781(c)(2),  [Appellant's] sentence was excessive and unreasonable and constitutes too severe a punishment in light of the rehabilitative needs of [Appellant].  The punitive measures inherent in the sentencing scheme could have been accomplished with a lesser sentence.

Post-Sentence Motion, 1/22/19, at 2.

- 10 -

us to review the discretionary aspects of the sentence imposed by the trial court.

In his Rule 2119(f) statement, Appellant argues that the trial court abused its discretion by applying the deadly weapon used enhancement. Appellant's Brief at 15-16. We have stated that a challenge to the application of the deadly weapon enhancement presents a substantial question. *Commonwealth v. Raybuck*, 915 A.2d 125, 127 (Pa. Super. 2006). In addition, Appellant contends the trial court abused its discretion by failing to follow the requirements of the Sentencing Code, 42 Pa.C.S. § 9721(b),[5] as it allegedly ignored the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. Appellant's Brief at 15. We conclude that in this instance, Appellant has raised a substantial question. *See Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (concluding that the appellant raised a substantial question where it was alleged that the trial court failed to consider the factors set forth in 42 Pa.C.S. § 9721(b)). Therefore, because Appellant raises substantial questions in these two claims, we will address them on appeal.

---

[5] We note that the factors to be considered under 42 Pa.C.S. § 9721(b) include the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant.

It is undisputed that sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Fullin*, 892 A.2d at 847. In this context, an abuse of discretion is not shown merely by an error in judgment. *Id*. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. *Id*.

Indeed, the sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference, as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted).[6]  As previously stated, when

---

[6] The *Walls* Court instructed the following:

> In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:
>
> (d) Review of the record.—In reviewing the record the appellate court shall have regard for:
>
>> (1) The nature of the circumstances of the offense and the history and characteristics of the defendant.

- 12 -

imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).  As we have stated, "a court is required to consider the particular circumstances of the offense and the character of the defendant."  ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation."  ***Id***.

The following is the applicable enhancement as contained in the sentencing guidelines:

> **§ 303.10.  Guideline sentence recommendations: enhancements**
>
> (a) Deadly Weapon Enhancement.
>
> * * *
>
> (2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.18).  An offender has used a deadly weapon if any of the following were employed

---

> (2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S. § 9781(d).

***Walls***, 926 A.2d at 963.

> by the offender in a way that threatened or injured another individual:
>
> * * *
>
> (iii)     Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa.Code § 303.10(a)(2).   In addition, a deadly weapon is defined as "[a]ny … device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury."   18 Pa.C.S. § 2301.   Moreover, we have stated that "[i]tems not normally considered deadly weapons can take on such status based upon their use under the circumstances."   **Commonwealth v. Rhoades**, 8 A.3d 912, 917 (Pa. Super. 2010).

Before the deadly weapon enhancement can be applied to a guideline sentence, the sentencing judge must first determine whether the offender used a deadly weapon during the commission of the conviction offense.   204 Pa.Code § 303.10(a)(2).   **See also** 204 Pa.Code § 303.9(b).   For purposes of the deadly weapon enhancement, the term "used" is defined to mean that the weapon was "employed by the offender in a way that threatened or injured another individual."   204 Pa.Code § 303.10(a)(2).   Thus, under section 303.10(a)(2), when the trial court determines that the offender used a weapon during the commission of the offense, the guideline applies if the offender used the weapon in a way that threatened or injured another individual.

- 14 -

With regard to his claim that the deadly weapon used enhancement was not applicable, Appellant again argues "there was insufficient evidence for the court to apply the [enhancement]." Appellant's Brief at 32. Specifically, Appellant contends "the evidence was insufficient to prove that [Mr. Lara] suffered 'serious bodily injury' as defined in 18 Pa.C.S. § 2301. A finding that there was no actual infliction of a 'serious bodily injury' … negates application of the Deadly Weapon (Used) Enhancement." *Id*. at 33.

As discussed in our disposition of Appellant's first issue, we conclude that Mr. Lara suffered a serious bodily injury when he was struck on the head by Appellant. This is in harmony with the trial court's determination that Appellant used a stick in a way that caused serious bodily injury, and the deadly weapon used enhancement applies. Thus, the trial court did not abuse its discretion when it employed the deadly weapon used enhancement of the sentencing guidelines. Consequently, Appellant's contrary claim lacks merit.

Appellant also argues that the trial court abused its discretion in imposing an excessive sentence. Appellant's Brief at 34-36. Appellant asserts that "the court focused solely on the nature of the criminal conduct and the need to protect others[.]" *Id*. at 35.

As we previously stated, it is undisputed that sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Fullin*, 892 A.2d at 847. Again, the appellant must establish, by reference to the record,

that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Id*. Appellate review with respect to a sentence within the guidelines is whether the sentence is "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). In addition, we observe that the Sentencing Guidelines, applying the "deadly weapon used" matrix, reflect that an offense gravity score of eleven and a prior record score of five suggest a minimum sentence of incarceration of ninety to 108 months. 204 Pa.Code § 303.17(b). Instantly, Appellant's minimum sentence is ninety-six months, which is within the standard suggested range.

Our review of the record reflects that, at the conclusion of his nonjury trial, Appellant elected to proceed immediately to sentencing, as reflected in the following discussion:

> THE COURT: … Now, when do you want to schedule sentencing?
>
> [ASSISTANT DISTRICT ATTORNEY]: Your Honor, I'm prepared to move forward to sentencing. I don't know about [defense counsel].
>
> [DEFENSE COUNSEL]: Your Honor, we may want - - may I have time to confer with my client, please?
>
> THE COURT: Sure. I mean, I can order a PSI if you want.
>
> [DEFENSE COUNSEL]: Yeah, we may.
>
> THE COURT: Whatever you want to do.
>
> [DEFENSE COUNSEL]: Thank you. Your Honor, [Appellant] has asked that we proceed with sentencing right away.

THE COURT: All right. Come on up.

N.T., 1/10/19, at 57-58.

Appellant then attempted to challenge the application of the deadly weapon enhancement. N.T. (Sentencing), 1/10/19, at 3. The trial court then addressed Appellant's claim by recounting the facts of the assault and the harm perpetrated upon Mr. Lara. *Id*. at 4. The trial court concluded:

> We saw the injuries and the damage that was done. That also, then, equates to the mechanism in which it was done and the indifference to human life. A striking of the head in such a manner that it was, we look at the relative difference also in the height, weight, and size and fortitude of the two individuals, and actually even noting that he was -- that the victim was in a bit of an intoxicated state weakens him even further in this circumstance. So, yeah, I do believe that in fact you have made out your deadly weapon enhancement.

*Id*. Hence, the trial court was aware of the particular facts of the crime and the gravity of the offense. However, we also observe that the trial court was sitting as the finder of fact and had just completed hearing the evidence in this one-day trial and rendered its verdict. Accordingly, the trial court heard Appellant's testimony offered in his defense immediately before rendering the verdict. N.T., 1/10/19, at 51-57. Specifically, the trial court was apprised of Appellant's age and his history with Mr. Lara, who was his neighbor. *Id*. at 51-52. The trial court was also made aware that Appellant had been in the hospital the day of the incident suffering from dehydration. *Id*. In addition, Appellant alluded to the fact that he has a criminal history. *Id*. at 53.

During cross-examination, Appellant offered the following testimony:

- 17 -

Q. [Appellant], you do live next to Mr. Lara, correct?

A. Yeah. That's my home plan, yeah.

Q. And you lived there for a while, correct?

A. No. I just got — I just got out of jail a week before that.

N.T., 1/10/19, at 54.

With regard to the incident, contrary to his confession to police, Appellant alleged that Mr. Lara had fallen down in a drunken stupor, which caused his injuries. *Id*. at 52. Appellant made the following comments about the incident:

> A. … That's — like I said, that's not the first time. It happened a lot of time[s]. We see that victim laying down. We try and pick him up. He, like, nah, nah, nah. Start screaming. So we just left him there, give up. Because every time I try to help, he just screaming, keep screaming. So I just, look, I'm just goin' to let him go, and bounce.
>
> Q. So you just left?
>
> A. I just left.
>
> * * *
>
> Q. So the victim just had these injuries, this bloody mess, and you never called the ambulance or anything, correct?
>
> A. Correct.

*Id*. at 56-57.

This testimony, offered immediately prior to the verdict and sentencing, granted the trial court the ability to understand the circumstances of the offense and the history and characteristics of Appellant, and is reflective of

Appellant's character and need for rehabilitation. In light of these facts presented to the trial court, we cannot conclude that the trial court abused its discretion in fashioning a minimum sentence within the Sentencing Guidelines, or that the sentence was clearly unreasonable. Hence, Appellant's claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2020