588 A.2d 528

**COMMONWEALTH of Pennsylvania**

v.

**Julio GONZALEZ, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1991.

Filed March 22, 1991.

Kenneth G. Gormley, Pittsburgh, for appellant.

Harriet Bromberg, Asst. Dist. Atty., Philadelphia, for Com.

Before WIEAND, MONTEMURO and HESTER, JJ.

MONTEMURO, Judge:

Appellant, Julio Gonzalez, appeals from a judgment of sentence entered pursuant to appellant's conviction for cruelty to animals, 18 Pa.C.S.A. § 5511(h.1). Appellant's sentence was suspended and he was directed to pay court costs and certain fines. This timely appeal followed. Appellant raises four challenges to the constitutionality of the cruelty to animals statute: (1) the statute improperly delegates investigatory and enforcement authority to agents of societies for the prevention of cruelty to animals; (2) the statute is preempted by federal law; (3) the statute is overbroad and vague; and (4) the seizure and destruction of the animals by the SPCA without notice or a hearing violates due process. We conclude that the destruction of the animals without notice or a hearing violated due process; nevertheless, we affirm the judgment of sentence.

Evidence at trial revealed that on March 19, 1987, a police officer went to appellant's residence in Philadelphia to execute a search warrant in an unrelated matter. In the basement of the house, the officer observed twenty-three roosters in cages; some of the roosters were groomed in a manner specific to cock fighting, that is, the fleshy appendages on their heads and necks, known as combs and wattles, were cut, and the feathers on the chest and leg area were shaven. The officer also found paraphernalia associated with cock fighting, different types of medicines and hormones, a trophy inscribed with "Number One Bird" and a newspaper clipping to the effect that possession of birds for fighting was a felony in Pennsylvania.

After notification to the Pennsylvania Society for the Prevention of Cruelty to Animals ("S.P.C.A."), the officer was joined by Agent Lovett, an anti-cruelty investigator employed by the S.P.C.A. Agent Lovett confirmed the police officer's suspicions that the birds were used for cock fighting. The S.P.C.A. removed the roosters and took them to the local S.P.C.A. shelter. Appellant was arrested by the police and subsequently charged and convicted of twenty-three counts of cruelty to animals.

In his pre-trial motion to quash the information and in his post-trial motions, appellant challenged the constitutionality of the cruelty to animals statute, which provides, in relevant part:

(h.1) **Animal fighting.**—A person commits a felony of the third degree if he:

* * * * * *

(3) owns, possesses, keeps, trains, promotes, purchases or knowingly sells any animal for animal fighting;

* * * * * *

(i) **Power to initiate criminal proceedings.**—An agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of the Commonwealth, shall have the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure. An agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of this Commonwealth, shall have standing to request any court of competent jurisdiction to enjoin any violation of this section.

(j) **Seizure of animals kept or used for animal fighting.**—Any police officer or agent of a society or association for the prevention of cruelty to animals incorporated under the laws of this Commonwealth, shall have power to seize any animal kept, used, or intended to be used for animal fighting. When the seizure is made, the animal or animals so seized shall not be deemed absolutely forfeited, but shall be held by the officer or agent seizing the

same until a conviction of some person is first obtained for a violation of subsection (h.1). The officer or agent making such seizure shall make due return to the justice of the peace before whom the complaint is heard, of the number and kind of animals or creatures so seized by him, and it shall be the duty of the justice of the peace hearing the complaint, in case of a conviction, to make the forfeiture of such animals or creatures seized a part of the sentence. Where an animal is thus seized, the police officer or agent is authorized to provide such care as is reasonably necessary, and where any animal thus seized is found to be disabled, injured or diseased beyond reasonable hope of recovery, the police officer or agent is authorized to provide for the humane destruction of the animal. The cost of the keeping, care and destruction of the animal shall be paid by the owner thereof....

\* \* \* \* \* \*

(1) **Search warrants.**—Where a violation of this section is alleged, any issuing authority may, in compliance with the applicable provisions of the Pennsylvania Rules of Criminal Procedure, issue to any police officer or any agent of any society or association for the prevention of cruelty to animals duly incorporated under the laws of this Commonwealth a search warrant authorizing the search of any building or any enclosure in which any violation of this section is occurring or has occurred, and authorizing the seizure of evidence of the violation including, but not limited to, the animals which were the subject of the violation....

18 Pa.C.S.A. §§ 5511(h.1), (i), (j), (*l*).

■ Appellant first claims that the delegation of "police power" to animal welfare agents under § 5511 to initiate felony proceedings, to make arrests and to seize and destroy forfeited property is unconstitutional. We agree with the Commonwealth's position that appellant is without standing to complain about the statute's investigation and arrest provisions. "It is a fundamental principle of constitutional law that a challenge to a statute may not be raised

in the abstract but must find its basis in an injury to the party seeking to have the enactment declared constitutionally infirm." *Commonwealth v. Bell*, 512 Pa. 334, 516 A.2d 1172 (1986) (citations omitted) (where defendant received actual pre-trial notice of Commonwealth's intention to seek mandatory sentence under statute, defendant lacked standing to challenge statute's failure to require pre-trial notice). Here, the presence of the birds was discovered by a police officer serving a search warrant on a unrelated matter. Upon discovering the evidence relating to cock fighting, the officer summoned a representative of the humane society who concurred in the officer's opinion as to the use of the roosters. Appellant was arrested by the police officer for cruelty to animals and pursuant to the warrant, the animals were seized and taken to the S.P.C.A. shelter. The involvement of the animal welfare agents was therefore peripheral to the execution of an undisputedly valid warrant of search. Accordingly, appellant lacks standing to challenge the legislative grant of power to representatives of animal humane societies.

■■ Appellant next asserts that § 5511 is preempted by the federal statute, 7 U.S.C. § 2156, which makes it unlawful to buy, sell, deliver, or transport animals in interstate commerce for purposes of having the animal participate in animal fighting, or to sponsor or exhibit an animal in any animal fighting venture. 7 U.S.C. § 2156(a), (b). The federal statute does not prohibit the passage of fighting birds in interstate commerce or the sponsorship of a bird in an animal fight if the fight is to take place in a state where such activities are lawful, 7 U.S.C. § 2156(d). Importantly, the federal legislation does "not supersede or otherwise invalidate any such State ... legislation or ordinance relating to animal fighting ventures except in case of a direct and irreconcilable conflict" between the State regulation and the federal regulation of animal fighting. 7 U.S.C. § 2156(h).

" 'The question of whether a certain state action is preempted by federal law is one of congressional intent.'

.... To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll–Rand v. McClendon*, 498 U.S. ——, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 483 (1990). Here, the statutory language contains a clear expression of congressional intent on the extent to which § 2156 pre-empts state law. Section 2156(h) reserves in the individual states the power to regulate animal fighting ventures, absent a direct or irreconcilable conflict between the state and federal statutes. 7 U.S.C. § 2156(h). Thus, Congress did not intend to pre-empt completely the field of animal fighting legislation.

Appellant maintains that Pennsylvania's animal cruelty statute creates an "irreconcilable conflict" with the federal law. Appellant argues that because the Pennsylvania statute outlaws the ownership and possession of fighting birds, even where there is no proof of fighting in Pennsylvania, the Pennsylvania law conflicts with the federal statute insofar as the federal provision does allow the commercial exchange and transportation of fighting cocks in connection with fights taking place in states where cockfighting is legal. We perceive no such irreconcilable conflict. The federal statute prohibits the "buying, selling, delivering, or transporting" of animals relative to animal fighting, except where the fight involves birds and is to take place in a state which allows cockfighting. The Pennsylvania statute prohibits animal fighting and ownership and possession of birds for fighting purposes in Pennsylvania. Thus, Pennsylvania's statute reflects the same congressional policy reflected in the federal law, that is, to curtail the use of animals for fighting purposes. In cases involving the transportation of birds in interstate commerce to a state which allows cockfighting, the Pennsylvania animal cruelty statute may not be used to interfere with their movement, as the federal statute does allow the use of commerce for this limited purpose. *See Commonwealth v. Doty*, 345 Pa.Super. 374, 389, 498 A.2d 870, 877 (1985), *appeal denied, cert. denied* 479 U.S. 853, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986)

(where some provisions of a statute are preempted by a federal statute, "the remaining provisions are not affected thereby unless the invalid provisions are so essentially and inseparably connected with the valid provisions that they cannot be executed in accordance with the legislative intent."). There are no allegations in the instant case that the roosters discovered in appellant's basement were intended for use in a state where cockfighting is legal.

We disagree with appellant's argument that simply because there may be situations in which the fighting bird found in the possession of a person in Pennsylvania may eventually be sold or delivered to a place where cockfighting is lawful, the Pennsylvania statute is inconsistent with the federal Act. As noted above, where the bird is in interstate commerce and intended for use in a fight which is to take place in a state which allows such animal fighting, Pennsylvania law will not bar the activities related to the animal.

■ Appellant next argues that section 5511(h.1)(3) of the animal cruelty statute, which makes it a felony to own, possess, keep, train, promote, purchase or knowingly sell any animal "for animal fighting," is unconstitutionally vague and overbroad, in violation of the Fourteenth Amendment to the United States Constitution and Article 1, § 1 of the Pennsylvania Constitution.

■ A statute is unconstitutionally vague where it fails to provide reasonable notice of the conduct to the person charged with violating its prohibitions. *Commonwealth v. Heinbaugh*, 467 Pa. 1, 5, 354 A.2d 244, 246 (1976); *Commonwealth v. Tavares*, 382 Pa.Super. 317, 324, 555 A.2d 199 (1989), *appeal denied* 524 Pa. 619, 571 A.2d 382 (1989); *Commonwealth v. Westcott*, 362 Pa.Super. 176, 195, 523 A.2d 1140 (1987), *appeal denied* 516 Pa. 640, 533 A.2d 712 (1987). Where the terms of the statute are so vague that " 'persons of common intelligence must necessarily guess at its meaning and differ as to its application,' " the statute will be deemed violative of due process. *Commonwealth v.*

*Sanders,* 380 Pa.Super. 78, 94, 551 A.2d 239, 247 (1988), *appeal denied* 522 Pa. 575, 559 A.2d 36 (1989), *quoting Fabio v. Civil Service Comm'n,* 489 Pa. 309, 414 A.2d 82 (1980).

> However, the constitutional prohibition against vagueness does not invalidate every statute which could have been drafted with greater precision. Due process requires only that the law give sufficient warning so that individuals may conform their conduct so as to avoid that which the law forbids. *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).

*Commonwealth v. Westcott, supra,* 362 Pa.Super. at 196, 523 A.2d at 1149–50.

Importantly, "the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged," and in view of the specific facts of the case before us. *Commonwealth v. Heinbaugh, supra,* 467 Pa. at 4–5, 354 A.2d at 245, *citing United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). Thus, " 'one to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Commonwealth v. Tavares, supra* 382 Pa.Super. at 324, 555 A.2d at 202, *quoting Hoffman Estates v. Flipside, Hoffman Estates Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

Instantly, appellant claims that § 5511(h.1)(3) is unconstitutionally vague because the statute fails to specify what constitutes an animal which is owned "for animal fighting," and the statute invites arbitrary enforcement. Brief for Appellant at 32, 35. Appellant relies on the expert testimony which he produced at trial to the effect that a fighting bird's physical characteristics, such as cut combs and wattles, may be shared by gamefowl raised for breeding or showing purposes.

In light of the standards set forth in the above-cited caselaw and the particulars of appellant's conduct, we conclude that appellant's claims of statutory vagueness must

fail. Appellant was convicted of possessing, owning and keeping gamefowl for animal fighting. The statute defines "animal fighting" as "[f]ighting or baiting any bull, bear, dog, cock or other creature." 18 Pa. C.S.A. § 5511(q). We find no ambiguity in the phrase "animal fighting." Indeed, the meaning of the word fighting is a matter of common knowledge. *Cf. Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987), *certiorari denied* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987). Webster's defines "cockfight" as "a contest of gamecocks usu. fitted with metal spurs." Webster's New Collegiate Dictionary (1981).

Although appellant's convictions for possession, ownership and keeping of roosters for fighting purposes rested in part on the fact that the birds found in appellant's possession were "dressed for fighting," that is, their wattle or comb was removed and/or the feathers from their breast and thigh area were plucked or removed, this fact combined with the other evidence shows that the animals were intended or had already been used for fighting purposes, rather than for breeding or showing purposes. The gamefowl had wounds in the face, chest, leg and eye areas which were consistent with cockfighting insofar as the wounds could have been caused by some sharp object or by a bite from another cock; some of the wounds still had blood clots on them. Also found on appellant's premises were sharp metal claw-like objects known as spurs which are fitted to the fighting rooster's leg to be used in fighting another rooster. The investigating police and S.P.C.A. agent found wax which is used to attach the spur to the bird, special vitamins and hormones to keep the birds healthy and strong, clippers and scissors, and a pit identical to pits in which cockfighting takes place. Further, the roosters were found housed in the same manner as fighting cocks are kept, that is, in separate cages so as to prevent them from fighting each other. We conclude that Pennsylvania's animal cruelty statute provides sufficient notice to a person of average intelligence that the phrase "for animal fighting" would apply to the birds found in appellant's possession. As

appellant's conduct fell well within the scope of the statutory language, appellant may not complain of vagueness.[1]

■ Appellant claims that the statute is overbroad because the law permits prosecution of individuals for mere possession of chickens who have had their combs and wattles trimmed and feathers shaved, as well as individuals who own gamefowl but never fight their animals in Pennsylvania, individuals who never fight in Pennsylvania but intend to go elsewhere where the sport is legal, and individuals who never fight at all but breed gamefowl for shows and fairs...." Brief for Appellant at 32, 36. A statute is overbroad where its language prohibits constitutionally protected conduct. *Commonwealth v. Stenhach,* 356 Pa.Super. 5, 25, 514 A.2d 114 (1986), *appeal denied* 517 Pa. 589, 534 A.2d 769 (1987) (where statute criminalizing hindrance of prosecution as applied to criminal defense attorneys implicated fourth, fifth and sixth amendments, statute was unconstitutionally broad). Where First Amendment rights are not involved, a litigant may not attack the facial overbreadth of a statute unless his or her own rights are directly affected by the asserted overbreadth. *Commonwealth v. Stock,* 346 Pa.Super. 60, 66, 499 A.2d 308 (1985), *appeal denied.*

■ We conclude that appellant lacks standing to challenge the statute's facial overbreadth. As detailed above, appellant was prosecuted for owning and possessing roosters for fighting purposes; there is no claim here that appellant's animals were being or intended to be fought in a state in which cockfighting is legal, or that the creatures were bred for showing purposes. The Commonwealth proved that the physical characteristics of appellant's birds were incident to cockfighting, rather than purely for aesthetic purposes. Thus, appellant's own rights were not af-

1. The out-of-state cases cited by appellant are inapposite, as they involve prosecutions of individuals accused of being spectators at, or present at, cockfights. None of the cases address whether the cocks were kept, owned, possessed, used, etc. "for animal fighting."

fected by the alleged overbreadth and we will not entertain his claim that the statute is unconstitutionally overbroad.[2]

In his final argument, appellant asserts that the animal cruelty statute violates the due process clauses of the United States and Pennsylvania constitutions, as the statute allows the seizure and destruction of property, that is, animals, by the S.P.C.A. without prior notice or a hearing. Incident to his arrest, the animals found in appellant's possession were seized by the humane authorities and eventually, because of illness allegedly stemming from the S.P.C.A.'s neglect and lack of due care, were humanely destroyed; appellant was not notified or afforded a hearing prior to the birds' destruction. The statute in relevant part provides:

> ... When the seizure is made, the animal or animals so seized shall not be deemed absolutely forfeited, but shall be held by the officer or agent seizing the same until a conviction of some person is first obtained for a violation of subsection (h.1). The officer or agent making such seizure shall make due return to the justice of the peace before whom the complaint is heard, of the number and kind of animals or creatures so seized by him, and it shall be the duty of the justice of the peace hearing the complaint, in case of a conviction, to make the forfeiture of such animals or creatures seized a part of the sentence. Where an animal is thus seized, the police officer or agent is authorized to provide such care as is reasonably necessary, and where any animal thus seized is found to be disabled, injured or diseased beyond a reasonable hope of recovery, the police officer or agent is authorized to provide for the humane destruction of the animal....

18 Pa.C.S.A. § 5511(j).

Dr. Islam Gul, the chief veterinarian at the Pennsylvania S.P.C.A., testified at trial that the roosters were healthy and in "good shape" when they were brought into the

---

2. We note that appellant has failed to state what constitutionally protected activity is implicated by the statute.

shelter. N.T. October 17, 1989 at 26. Because the S.P.C.A. was not equipped to care for the roosters, the animals became sick and Dr. Gul ordered their destruction. *Id.* at 43. The killing of the birds occurred prior to appellant's trial and conviction on the animal cruelty charges.

We agree that the procedure regarding destruction of the animals, as authorized by the statute and employed by the Pennsylvania S.P.C.A., violates due process. The United States Supreme Court employs a two-step analysis when analyzing claims that a state has violated an individual's right to procedural due process. The first area of inquiry deals with whether there exists a "life, liberty, or property" interest protectable under the fourteenth amendment with which the state has interfered. If the court determines that the state has deprived an individual of a protectable interest, we move to the second step of the inquiry to determine whether the entity responsible for the alleged deprivation instituted constitutionally sufficient procedural protections. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). At the outset, we note that neither party disputes that the requirements of due process apply in this case, as the destruction of the chickens constituted a deprivation of appellant's property, and was accomplished by the S.P.C.A. as an agent of the state.

"While not capable of exact definition, the basic elements of procedural due process are adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case." *Commonwealth v. Thompson,* 444 Pa. 312, 316, 281 A.2d 856, 858 (1971). "When an individual is deprived of property by governmental action, he must be afforded at some point in the proceeding an opportunity to be heard. The point at which this hearing must take place, however, varies with the circumstances." *Cedarbrook Realty, Inc. v. Nahill,* 484 Pa. 441, 447, 399 A.2d 374, 377 (1979). The United States Supreme Court has stated:

The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment-to minimize substantively unfair or mistaken deprivations of property, .... So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. See *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552 [92 S.Ct. 1113, 1122, 31 L.Ed.2d 424].

The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of property. For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that "fairness can rarely be obtained by secret, one-sided determinations of facts decisive of rights.... [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170–172, 71 S.Ct. 624, 647–49, 95 L.Ed. 817 (Frankfurter, J., concurring).

*Fuentes v. Shevin*, 407 U.S. 67, 80–81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).

The United States Supreme Court has expressed a preference for pre-deprivation hearings:

If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time

when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred....

*Id.*, 407 U.S. at 81–82, 92 S.Ct. at 1994–95.

Similarly, the Pennsylvania Supreme Court has stated:

We also recognize a preference for procedures which provide a citizen with protections before he is deprived of an interest protected by due process.... A citizen is best protected against arbitrary action when he is given an opportunity to challenge that action before it is taken. Not only is it easier to persuade the government to reconsider a decision before it is carried out, but the citizen is also protected against infringement on his interest for the period during which his challenge takes place. Even if the citizen prevails in proceedings which take place after government action is taken, he still has suffered an infringement on his interests during the period required for those proceedings. Thus, procedural protection should be given before the government takes action which threatens to deprive a citizen of an interest, unless important governmental interests, or the preservation of the interests of others, require otherwise. See *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). The root requirement of due process is that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Id. (emphasis in original) (footnotes omitted).

*PA. Coal Mining Ass'n v. Insurance Dept.*, 471 Pa. 437, 370 A.2d 685, 692 (1977).

In view of the particular circumstances presented by this case, we conclude that the provisions of Pennsylvania's animal cruelty statute which allow the police or humane society to destroy animals without offering the owner the opportunity to be heard offend the basic standards of procedural due process articulated by the United States and Pennsylvania Supreme Courts.

The animal cruelty statute at issue here contains no provision for a either a pre-deprivation or post-deprivation hearing. The statute contains no requirement that the police or the humane society make a convincing showing before an independent tribunal that the animal's health has deteriorated "beyond a reasonable hope of recovery" before destroying the animal. Nor does the statute provide the owner of the animal with an opportunity to confront and cross-examine the agents of the humane society as to their conclusion that destruction of the animal is necessary. The statute does not provide the owner of the animal the opportunity to assure that the animals receive the proper care pending the outcome of the criminal trial. Thus, the potential for abuse on the part of the police or humane society is tremendous. The statutorily authorized arbitrary deprivation of property strikes at the core of the notion of fair play embodied in the due process clause, and is precisely the kind of state action which is prohibited by the Fourteenth Amendment. The requirement of pre-deprivation notice and a hearing are particularly pressing where the property consists of animals, as many individuals develop deep attachments to their pets and would likely deem them noncompensable in monetary damages. Moreover, the situations in which an animal owner may remedy the negligent destruction of his or her property by the humane society is limited. *See* 42 Pa. C.S.A. § 8332.2 (granting immunity to officers, directors and trustees of nonprofit institutions for acts or omissions unless conduct falls "substantially below" the generally accepted standards exercised by persons in like circumstances). Although it is true that "due process is flexible and calls for such procedural protections as the

particular situation demands;" *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), here the statute offers absolutely no procedural protections against the arbitrary encroachment of an animal owner's property rights. Given the nature of the deprivation of property rights at issue here, that is, the complete, albeit humane, destruction of the animals, we find that the only meaningful opportunity to ensure a fair process of decision-making is likely to be before the deprivation takes effect.

We agree with the Commonwealth's position that the state has a legitimate interest in regulating animal cruelty and seizing animals which the police have probable cause to believe are being subjected to conduct prohibited by the statute. However, we perceive no overriding governmental interest reflected in the statute's complete failure to guarantee animal owners the opportunity to be heard prior to the destruction of their animals which would outweigh the owners' interest in assuring that the destruction is necessary or arranging for the proper care of the animals prior to the disposition of the criminal charges. The Commonwealth has asserted no state interest which would justify the denial of procedural due process in cases arising under the animal cruelty statute. We note that the statute requires the owner to shoulder the burden of the costs of the animal's keeping and care; thus, the state may not claim to have a financial interest in having the animals destroyed prior to a hearing.

The Commonwealth analogizes this case to other situations involving the confiscation of contraband, such as narcotics and weapons, and the subsequent forfeiture of such property following conviction. Here, the animal cruelty statute requires that forfeiture of the animals be made a part of the sentence where the owner is found guilty of violating the statute. Appellant does not challenge the sentencing provision of the statute. We disagree that simply because an individual may subsequently be required to forfeit ownership of the animal, the state may prematurely

destroy the animals without providing the owner with the opportunity to voice opposition to the proposed destruction.

We hold that the animal cruelty statute is unconstitutional insofar as the statute authorizes the destruction of animals without notification of the owner and without a hearing at which the owner may challenge the necessity of the destruction. As the provision of the statute is not "so essentially and inseparably connected with the valid provisions that they cannot be executed in accordance with the legislative intent," the remaining provisions of the statute are not affected by our decision. *Commonwealth v. Doty, supra* 345 Pa.Super. at 389, 498 A.2d at 877.

We note that the only remedy sought by appellant arising from the asserted constitutional infirmities is vacation and reversal of his judgment of sentence. Our holding that the destruction of appellant's animals without notice and a hearing violated due process does not warrant a reversal of appellant's criminal sentence. As the violation in no way affected the adjudication of appellant's guilt, such a violation would more appropriately be remedied through a civil suit.[3]

For the foregoing reasons, we affirm the judgment of sentence.

Judgment affirmed.

---

**3.** With regard to harm suffered by appellant, we note that appellant ultimately forfeited his property rights in the roosters by virtue of his conviction. *See* 18 Pa. C.S.A. § 5511(j).