J-S01024-19

2019 PA Super 65

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHARLES BAUMGARTNER :
:
Appellant : No. 795 MDA 2018

Appeal from the Judgment of Sentence March 15, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002383-2017

BEFORE: PANELLA, P.J., MURRAY, J., and PELLEGRINI*, J.

OPINION BY MURRAY, J.: **FILED MARCH 04, 2019**

Charles Baumgartner (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of animal fighting for amusement or gain.[1] Appellant claims the evidence was insufficient to support his conviction. After careful review, we affirm.

Appellant was charged as a result of an incident that occurred on March 9, 2017. The criminal complaint states:

[Appellant] did bring his white pit bull or bully dog named Menace to the area of 14th and Swatara Streets to fight a pit bull dog belonging to Adam Aviles. [Appellant] did slap his dog several

---

[1] 18 Pa.C.S.A. § 5511(h.1)(1) (Cruelty to Animals) (repealed June 28, 2017, P.L. 215, No. 10, § 3, effective August 28, 2017). Because the events that led to Appellant's animal fighting conviction occurred on March 9, 2017, Section 5511(h.1) applies. Animal fighting "for amusement or gain" was recodified at 18 Pa.C.S.A. § 5543(1), which provides: "A person commits a felony of the third degree if the person: (1) for amusement or gain, causes, allows or permits an animal to engage in animal fighting[.]" ***Id.***

---

\* Retired Senior Judge assigned to the Superior Court.

times and verbally encourage the dog to fight the pit bull belonging to Aviles.

Criminal Complaint, 3/29/17, at 4.

The affidavit of probable cause further provides:

On 3/9/17 at about 1655 hours PO Chad McGowan was flagged down in the area of 14th and Swatara Streets for a person down. . . .

On 3/10/17 I was informed that a video of the incident was on social media. The video was downloaded and sent to me. The video shows a dog fight between a dog belonging to Aviles and a white pit bull with the name Menace. Three people brought the dog to the area of 14th and Swatara Streets to fight Aviles' dog. The assault of Aviles occurred immediately following the dog fight.

On 3/21/17 at about 1200 hours I interviewed one of the suspects, Evelyn Lewis, in the dog fighting video. I verbally mirandized Lewis prior to any statements taken from Lewis. Lewis admitted being present for the dog fight and assault of Aviles. Lewis said that there was an issue with Aviles' pit bull and other dogs in the area of 14th and Hunter Streets where Lewis was visiting friends. The dogs belonged to Lewis' friend. Lewis and Aviles had a verbal confrontation about what happened and Aviles and his dog left the area.

Lewis saw Aviles and his pit bull dog at 14th and Swatara Streets a short time later. Lewis witnessed another pit bull named Face belonging to Turrell Bomar-Sweet jump out of the window of Sweet's vehicle and start fighting with Aviles' dog. Sweet and Aviles separated their dogs. A small verbal dispute began. Lewis went to get another dog to come to the area. A very short time later Lewis returned with Samuel Lindsay, [Appellant] and [Appellant's] white pit bull named Menace. Lindsay, Lewis and [Appellant] verbally and physically enticed Menace to fight Aviles' pit bull. The dogs began to fight. After the fight Lindsay and [Appellant] physically assaulted Aviles with their hands and feet, knocking Aviles to the ground unconscious. Lewis then yelled at Aviles and slapped him on the mouth with an open hand. Lewis identified Lindsay and [Appellant] as the two suspects from two separate photo arrays I showed her. Lewis said that Menace had some bite marks on him from the fight.

- 2 -

> On 3/22/17 I interviewed Aviles who told me he was walking his dog and two puppies in the area when someone approached him with a dog and made his dog fight Aviles' dog. Aviles attempted to get away when two males assaulted him causing the injuries listed.

Affidavit of Probable Cause, 3/29/17, at 1.

Appellant was charged with assaulting Mr. Aviles and animal fighting. Appellant appeared for trial on March 12-13, 2018, after which the jury found him guilty of animal fighting.[2] On March 15, 2018, the trial court sentenced Appellant to 11½ to 23 months of incarceration.[3] Appellant filed a post-sentence motion challenging the sufficiency of the evidence, which the trial court denied. Appellant filed this timely appeal.[4]

Appellant presents a single issue on appeal:

---

[2] Appellant was found not guilty of aggravated assault and simple assault against Mr. Aviles. Trial Court Statement in Lieu of Rule 1925(a) Opinion, 6/22/18, at 1.

[3] Appellant filed an application for parole and work release which the trial court granted on April 19, 2018, effective April 20, 2018.

[4] Although the trial court ordered compliance with Rule 1925 of the Pennsylvania Rules of Appellate Procedure, it declined to issue an opinion because "no transcripts have been requested from the Jury Trial held on March 12, 2018." Trial Court Statement in Lieu of Rule 1925(a) Opinion, 6/22/18, at 3. The Commonwealth responded that the trial transcript had "been lodged at the lower court docket." Commonwealth Brief at 4. The Commonwealth thus suggested that this Court remand the case for the filing of a trial court opinion. *Id.* at 3. While "we do not approve or sanction the trial court's failure to comply with Rule 1925(a)", our review of the transcript of the jury trial, which is contained in the certified record on appeal, suffices to facilitate our review of Appellant's sufficiency claim, and we thus "decline to delay this case further by remanding for the preparation of a 1925(a) opinion, and proceed to review merits of Appellant's claims." *See **Commonwealth v. Hood***, 872 A.2d 175, 178 (Pa. Super. 2005) (citations omitted).

1. The verdict of guilt as to Animal Fighting should have been set aside as being based upon insufficient evidence as the Commonwealth failed to present any evidence of Amusement or Gain as required by 18 Pa.C.S.A. § 5511 (h.1)(1).

Appellant's Brief at 6.

Our standard of review of Appellant's sufficiency claim is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Leaner*, --- A.3d ---, 2019 WL 124382, at *11 (Pa. Super. 2019) (citation omitted). To reiterate, the jury, as the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). In conducting review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. *Id.* at 39-40.

- 4 -

Instantly, Appellant was convicted under 18 Pa.C.S.A. § 5511(h.1)(1), which provided that a person committed a felony of the third degree if he, "for amusement or gain, causes, allows, or permits any animal to engage in animal fighting." *See id.* Appellant argues that "to sustain his conviction, the Court must conclude that the evidence proved beyond a reasonable doubt that the Appellant committed the acts and intentionally encouraged dog fighting for amusement or gain." Appellant's Brief at 9, 14. Appellant misstates the law. As cited above, well-settled law is that **the jury** must conclude that the evidence proved beyond a reasonable doubt that Appellant committed the crime of dog fighting. *See Leaner*, 2019 WL 124382, at *11; *Melvin*, 103 A.3d at 39.

Appellant also asserts that the evidence was insufficient to support his conviction because the Commonwealth failed to prove that he engaged in animal fighting for "amusement" or "gain." Appellant's Brief at 10. Appellant claims that "the vagueness of [the] statute['s terms] 'amusement or gain,' made the evidence insufficient to sustain the verdict beyond a reasonable doubt." *Id.* at 14. We disagree.

At the outset, we note that Pennsylvania's Cruelty to Animals statute does not – and has not – defined the terms "amusement" or "gain." *See* 18 Pa.C.S.A. § 5531 (Definitions); *see also* 18 Pa.C.S.A. § 5511(q) (repealed). We are thus guided by principles of statutory interpretation:

> In matters involving statutory interpretation, the Statutory Construction Act directs courts to ascertain and effectuate the

intent of the General Assembly. 1 Pa.C.S. § 1921(a). A statute's plain language generally provides the best indication of legislative intent. In construing the language, however, and giving it effect, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.

***Commonwealth v. Giulian***, 141 A.3d 1262, 1267 (Pa. 2016) (quotation marks and some citations omitted). Further:

> when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning. 1 Pa.C.S.A. § 1921(b). This means ascribing to the particular words and phrases the definitions which they have acquired through their common and approved usage. 1 Pa.C.S.A. § 1903. It is only in instances where the words of a statue are not explicit, or they are ambiguous, is there need to resort to consideration of the factors in aid of construction enumerated in 1 Pa.C.S.A. § 1921(c).
>
> Concomitant with these considerations, the Statutory Construction Act also sets forth certain presumptions regarding the General Assembly's enactment of statutes which are to be applied when attempting to ascertain its legislative intent. In particular, when interpreting a statutory provision we must presume that the legislature: does not intend a result that is unreasonable, absurd, or impossible of execution, 1 Pa.C.S.A. § 1922(1); and intends the entirety of the statute to be certain, 1 Pa.C.S.A. § 1922(2). Additionally, . . . penal statute[s] must be strictly construed. 1 Pa.C.S.A. § 1928(b)(1). However, this principle does not require that our Court give the words of a statute their narrowest possible meaning, nor does it override the general principle that the words of a statute must be construed according to their common and approved usage. Rather, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of the doubt.

***Commonwealth v. Hart***, 28 A.3d 898, 908 (Pa. 2011) (quotation marks and some citations omitted).

Our exhaustive review of Pennsylvania statutory and case law has yielded no guidance or authority for defining "amusement" or "gain" as stated

in Section 5511(h.1)(1). Nevertheless, the phrase "amusement or gain" is used by several states in their statutes proscribing animal fighting.[5] However, like Pennsylvania, no jurisdiction has defined the phrase "for amusement or gain."[6]

_____

[5] *See, e.g.*, Ala. Code § 3-1-29(a)(2) (dog fighting); A.R.S. § 13-2910.01(A)(2) (animal fighting); Cal. Penal Code § 597b(b) (fighting, worrying or injuring animals); Conn. Gen. Stat. Ann. § 53-247(c) (cruelty to animals); La. R. S. § 14:102.5(A)(1) (cruelty to animals); MCA 45-8-210(1)(b) (causing animals to fight); N.Y. Agric. & Mkts. L. § 351(2)(a) (prohibition of animal fighting); Utah Code Ann. § 76-9-301(2) (cruelty to animals).

[6] The Practice Commentaries section of the New York animal fighting statute states:

> It should be noted that, under the phrasing of the statute, "amusement or gain" is a motive, not an intent. *See* Practice Commentary to N.Y. Agric. & Mkts. L. § 353, Application, Abuse Provisions, Mental Culpability. **The specific phrase has not yet been examined in a published case under New York law or in any jurisdiction with a statute containing similar phraseology**. *See, e.g.*, **18 Pa. Stat. and Cons. Stat. Ann. § 5511(h)(1) (West)**; La. Stat. Ann. § 14:102.5(A)(1); Ala. Code § 3-1-29(a)(2); Conn. Gen. Stat. Ann. § 53-247(c) (West); Cal. Penal Code § 597b(b) (West); Utah Code Ann. § 76-9-301(2) (West). **As a whole, the phrase seems to import the personal or pecuniary enrichment of the actor inciting the conduct.** *Cf.* N.Y. Penal L. § 10.00(17) (including "gain" in the definition of "benefit"); *People v. Feerick*, 93 N.Y.2d 433, 447 (1999).

N.Y. Agric. & Mkts. L. § 351(2)(a), Practice Commentaries (emphasis added).

Because the General Assembly did not define either "amusement" or "gain" as stated in Section 5511(h.1)(1),[7] "[their] common and approved usage may be ascertained by examining [their] dictionary definition[s]." *Hart*, 28 A.3d at 909 (citing cases). Merriam-Webster's Dictionary defines "amusement" as "a means of amusing or entertaining; the condition of being amused; pleasurable diversion."[8] As to "gain," Merriam-Webster provides: "resources or advantage acquired or increased; the act or process of acquiring something; an increase in amount, magnitude, or degree."[9] And while Black's Law Dictionary does not define the word amusement, it defines gain as "[a]n increase in amount, degree, or value."[10]

Mindful of the foregoing, we have thoroughly reviewed the trial court record, and conclude that contrary to Appellant's assertion, the Commonwealth provided sufficient evidence for the jury to find that Appellant engaged in animal fighting for amusement or gain, *i.e.*, for "pleasurable diversion" or "advantage acquired or increased."

---

[7] *See* 18 Pa.C.S.A. § 5511(q)(Definitions) (repealed).

[8] *Amusement Definition*, Merriam-Webster, https://www.merriamwebster.com/dictionary/amusement.

[9] *Gain Definition*, Merriam-Webster, https://www.merriamwebster.com/dictionary/gain (emphasis added).

[10] Black's Law Dictionary, 10th Edition, at 792.

The Commonwealth presented the testimony of Ms. Evelyn Lewis. **See** N.T., 3/12/18, at 26-85. Ms. Lewis, who was also facing assault and animal fighting charges for the same incident, testified that on March 9, 2017, she was sitting on the porch of a residence located at 14th and Hunter Streets, when she saw Mr. Aviles, with whom she was familiar, walking an adult pit bull and two pit bull puppies. **Id.** at 27-31.

Ms. Lewis testified that she asked Mr. Aviles to wait until she could get a nearby neighborhood pit bull "off the leash" and taken to its owner, Turrell Bomar-Sweet. N.T., 3/12/18, at 32. According to Ms. Lewis, Mr. Aviles began "cussing" at her. **Id.** Ms. Lewis then stated "code red" to another woman who was sitting with her on the porch, and left to find Mr. Bomar-Sweet. **Id.** at 33. Mr. Bomar-Sweet then exited his house with another dog, named "Face," and got into a vehicle. **Id.** Mr. Bomar-Sweet drove a short distance before Face jumped out of the vehicle's window, and proceeded to fight with Mr. Aviles' adult pit bull dog. **Id.** at 34-35. Mr. Bomar-Sweet exited his vehicle, separated the dogs, placed Face back in the vehicle, and drove away. **Id.** at 35.

Ms. Lewis returned to 14th and Hunter Streets, where she encountered Appellant's co-defendant, Samuel Lindsay. **Id.** at 38-39. Ms. Lewis told Mr. Lindsay that Mr. Aviles was the owner of the dogs who had previously "fought Momma," Ms. Lewis's pit pull. N.T., 3/12/18, at 39-40. Ms. Lewis testified that on a prior occasion, Mr. Aviles approached Momma with two pit bulls on

- 9 -

a "tow chain," at which point the two dogs tried to attack Momma, who took refuge under a trailer hitch. *Id.* at 40. Ms. Lewis stated that Mr. Aviles "was told not to bring his dogs around no more." *Id.*

Mr. Lindsay accompanied Ms. Lewis back down the street to talk to Mr. Aviles. N.T., 3/12/18, at 41. Ms. Lewis testified that at some point during the conversation, Mr. Lindsay told her to go get Appellant's dog, "Menace." *Id.* at 42. Ms. Lewis then ran up the street yelling Menace's name. *Id.* Ms. Lewis testified that because the windows of Appellant's residence were open, Appellant could hear her calling Menace from Appellant's location on the third floor. *Id.* As a result, by the time Ms. Lewis got to Appellant's residence, Appellant and Menace met Ms. Lewis on the second floor. *Id.* at 42, 67. They proceeded to run down the stairs, out of the residence, and toward Mr. Aviles. *Id.* at 42. Mr. Lindsay joined Appellant, Menace, and Ms. Lewis as they ran toward Mr. Aviles. *Id.* at 43. At that point, Menace and Mr. Aviles' dog began to fight. *Id.* Ms. Lewis testified that she, Appellant, and Mr. Lindsay verbally encouraged the dog fight. *Id.* In addition, both Appellant and Mr. Lindsay physically smacked Menace "on the ass" to further provoke him. *Id.* at 44. Ms. Lewis stated that no one tried to stop the dog fight, and because she did not stay longer, she did not know how the fight ended. *Id.* at 68-69.

Mr. Aviles also testified. *See* N.T., 3/13/18, at 96-125. He stated that the prior incident with Ms. Lewis's dog, Momma, occurred while he was taking his dogs home from preparing their food at a friend's house. *Id.* at 97-99.

- 10 -

While walking back, his dogs, who were both on leashes, saw Momma. *Id.* at 99. Momma started to bark, and thus Mr. Aviles' dogs, who were antagonized, began to drag Mr. Aviles, eventually freeing themselves and fighting with Momma. *Id.* Mr. Aviles characterized the encounter as an accident, and stated that he apologized for the incident. *Id.* at 100.

Mr. Aviles further testified that on March 9, 2017, he had two puppies and an adult dog with him. N.T., 3/13/18, at 100-101. As he approached the intersection of 14th and Swatara Streets, he saw two men, a woman, and a dog approach him. *Id.* at 101-102. Mr. Aviles told the individuals that he did not want any trouble, but they "proceeded to sic the dog on my dog." *Id.* at 103. Mr. Aviles testified that one of the individuals was encouraging the dog to attack while Mr. Aviles attempted to separate the dogs. *Id.*

Elphonso Palmer, a neighbor who lived on the corner of 14th and Swatara Streets, testified about the incident that occurred on March 9, 2017. The following exchange occurred between the Commonwealth and Mr. Palmer:

> Q. So the day of the assault, the day that we are looking at here, you heard the ruckus and you go out on your porch. When you get out on your porch, what do you see out there?
>
> A. Two gentlemen and a Caucasian female, you know, enticing, they are arguing with an older black gentleman and trying to get the two dogs to fight.
>
> Q. And you say they were trying to get their two dogs to fight. Specifically, what were they doing?
>
> A. They were trying to excite their dog to attack the other dog.

Q. Were they -- how were they -- were they physically exciting it? Were they yelling at it? What were they doing? Do you remember?

A. Pretty much, like, smacking it on its head, on his butt. Get him. Get him.

Q. So they were encouraging their dog by striking him in an effort to get him to fight the other dog?

A. Yes. …

Q. The victim in this case, what was he doing while they were encouraging their dog to attack his?

A. Pretty much just standing there. He was scared.

N.T., 3/13/18, at 128-129.

The Commonwealth also introduced exhibits which were admitted for the jury's consideration. Another neighbor, Adam Esquivel, appeared and authenticated a video he recorded which depicted the incident, and which he subsequently posted to Facebook. N.T., 3/12/18, at 23; Commonwealth Exhibit 1. The video was played for the jury. Agent Donald Heffner, from the Pennsylvania Attorney General's Office, noted that the video "show[ed] -- you can see [Appellant] slapping the dog. And then other people in there agitating. And at some point, there appears to be a fight." N.T., 3/13/18, at 164; Commonwealth Exhibit 1.

In addition, the Commonwealth played an audio recording of a statement Agent Heffner took from Appellant. *Id.* at 177; Commonwealth Exhibit No. 3. The Commonwealth questioned Agent Heffner:

Q. Okay. So again, Agent Heffner, is that indeed a fair and accurate portrayal of the conversation you had with [Appellant] that day?

A. Yes.

Q. So we all just heard the interview. And we heard -- would you say that [Appellant] was cooperative during the interview?

A. Well, he was angry. He was very matter of fact about everything that happened. . .

Q. And what else did -- was there anything else important that he said to you as far as your thoughts on the investigation during that statement?

A. . . . He admitted to slapping his dog, telling him to get him. He brought the dog to the area and he was already angry with Mr. Aviles prior to this. . .

Q. Did he seem angry that his dog was injured? Did that seem to be part of this?

A. Yes.

Q. And I'm trying to qualify that anger. Was it related to injur[ies] that day, on March 9th, or was he more pissed off that [the dog] was injured three weeks ago when it was attacked when it was chained up?

A. He was angry at the actions of [Mr. Aviles]. So it was a culmination of everything from the first incident to the last incident. I think that's where [Appellant's] anger came from. So I'm not going to say it was one way or another. I think it was a culmination of everything.

*Id.* at 178-179, 183, 184.

On this record, we find that the evidence admitted at trial, viewed in the light most favorable to the Commonwealth, was sufficient for the jury to find beyond a reasonable doubt that Appellant "caused, allowed or permitted" his

dog to engage in animal fighting for amusement or gain, where Appellant, responding to the request of Ms. Lewis, left his residence with Menace and sought out Mr. Aviles and his dog, prompted Menace to attack and fight Mr. Aviles' dog, and was admittedly angry and sought to acquire, *i.e.*, gain, retribution.

As noted above, there is a scarcity of legal authority discussing the crime of animal fighting, and for that matter the animal cruelty statute under which animal fighting falls.  The cases tend to involve scenarios where animal fighting is conducted for pecuniary gain, or domestic animals are intentionally and unlawfully injured or killed.  **See Commonwealth v. Craven**, 817 A.2d 451, 454 n.4, 456 (Pa. 2003) (Pennsylvania's animal cruelty statute aims to punish "only those people who knowingly attend an animal fight as a purposeful observer" and is not unconstitutionally vague or overbroad); **Commonwealth v. Gonzalez**, 588 A.2d 528, 530 (Pa. Super. 1991) (affirming appellant's convictions of 23 counts of animal cruelty related to cock fighting); **Commonwealth v. Balog**, 672 A.2d 319 (Pa. Super. 1996) (unsuccessful constitutional challenge of § 5511(h.1)(3) where statute was held not to be overbroad or vague as applied to appellant's possession of gamecocks for fighting); **Snead v. Society for the Prevention of Cruelty to Animals**, 929 A.2d 1169 (Pa. Super. 2007) (owner of numerous pit bulls whose charges of animal fighting were dropped, had "protected property interest" in her dogs for purposes of her claim based on a violation of her

procedural due process rights against animal cruelty prevention society for euthanizing her dogs); **Commonwealth v. Tapper**, 675 A.2d 740 (Pa. Super. 1996) (rejecting appellant's sufficiency claim that he could not be convicted of animal cruelty under Section 5511(a)(1)(i) on the basis that he was the owner of the dog he killed); **Commonwealth v. Clarke**, 70 A.3d 1281 (Pa. Super. 2013) (affirming conviction of physical abuse of a dog, dismissing discretionary aspects of sentencing claim, but remanding for imposition of mandatory fine required by Section 5511(a)(1)(i)).

The case before us is different in that the fight between Appellant's dog Menace and Mr. Aviles' pit bull was not organized for pecuniary gain, and the dogs were injured by each another and not directly by Appellant – although clearly at the behest of Appellant and the result of Appellant's actions in facilitating the dog fight. Nonetheless, we conclude that the evidence was sufficient to support Appellant's conviction of animal fighting for "amusement or gain" where Appellant's motive was personal gain, and he caused his dog to fight Mr. Aviles' dog as a means of retribution. We note that had the legislature intended the animal fighting statute to apply only to animal fights organized as financial enterprises for pecuniary gain, it would have worded the statute to reflect that intent. To the contrary, the disjunctive statutory phrase "for amusement or gain" indicates that animal fighting is a crime whether it is motivated by personal or pecuniary gain. **See** New York Practice Commentaries, **supra** note 5.

- 15 -

Accordingly, we hold that under the facts of this case, where Appellant incited his pit bull to attack another pit bull as retribution for a prior incident, the Commonwealth provided sufficient evidence for a jury to convict Appellant of animal fighting for amusement or gain.

Judgment of sentence affirmed.

P.J. Panella joins the Opinion.

Judge Pellegrini files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/04/2019