**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELI DANIEL CANGANELLI | : | |
| | : | |
| Appellant | : | No. 1204 MDA 2018 |

Appeal from the Judgment of Sentence Entered March 19, 2018
In the Court of Common Pleas of Adams County
Criminal Division at No(s):  CP-01-CR-0000320-2017

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY OTT, J.:                          **FILED JULY 19, 2019**

Eli Daniel Canganelli appeals from the judgment of sentence imposed on June 20, 2018, in the Court of Common Pleas of Adams County, following his conviction by jury on the charges of Stalking (repeated acts), Stalking (repeated communications), Unlawful Dissemination of Intimate Image, and Harassment.[1]  Canganelli received an aggregate sentence of three to 23 months' incarceration with a concurrent sentence of five years' probation.  In this timely appeal, he claims there was insufficient evidence to convict him of Stalking (both counts) and Unlawful Dissemination.  He also claims his convictions on those charges were against the weight of the evidence.  After

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2709.1(a)(1), 2709.1(a)(2), 3131(a), and 2709(a)(5), respectively.

a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

The underlying facts of this matter, as developed at trial, are taken from the trial court's August 15, 2018, Pa.R.A.P. 1925(a) opinion.

> [K.H.] (hereinafter "Victim"), had been in a relationship with [Canganelli] from January 2015 until April 2016, when the Victim ended the relationship. During the course of their relationship, the Victim sent [Canganelli] several intimate images of herself.[2] [Canganelli] posted one of the images of the Victim on a public Facebook page without Victim's knowledge or permission. Upon finding it, the Victim petitioned Facebook to take the image down. During late summer 2015, [Canganelli] sent the Victim intimate images and nude images of the Victim by text message. The Victim was unaware [Canganelli] had taken these photographs during their relationship and did not consent to them being taken. [Canganelli] told the Victim that he had nude photos of women that he used as blackmail.
>
> On May 20, 2016, after the Victim had ended the relationship, at the request of the Victim, McSherrystown police officer Brian Wheeler informed [Canganelli] that [he] should not have any contact with the Victim, including telephone, face contact or social media. [Canganelli] advised Officer Wheeler he understood. Despite this warning, [Canganelli] continued to contact the Victim. [Canganelli] created a fictitious Facebook account with the name "Julie Clayton" and attempted to "friend request" the Victim's Facebook account. [Canganelli] used this account to upload the intimate images of the Victim, including the images [Canganelli] had taken of the Victim without her consent. The images were edited to censor the Victim's exposed genitalia with pig ears, noses and other objects. The Victim's face was not visible in the images but during testimony the Victim identified herself as the woman in the images. Detective Beyer testified he viewed the "Julie Clayton" Facebook page by searching "Julie Clayton" on

---

2 While at least one of the photographs depicted K.H. in her underwear, none apparently were nudes.

Facebook without being "friends" with the "Julie Clayton" page and observed the intimate images of the Victim.

Detective Beyer testified he executed a search warrant on [Canganelli's] residence on December 8, 2016 in Adams County and located and seized the unedited intimate images of the Victim on computers located at [Canganelli's] residence. Detective Beyer testified that he and Special Agent Zahm of the Pennsylvania Office of Attorney General conducted a non-custodial interview with [Canganelli] on December 8, 2016. [Canganelli] admitted to creating the "Julie Clayton" Facebook page and uploading the edited intimate images of the Victim to this page. [Canganelli] stated he sent friend requests to the Victim's Facebook page from this account to get the Victim's attention. [Canganelli] admitted that law enforcement had previously informed him not to contact the Victim.

Trial Court Opinion, 8/15/2018, at 3-5

Canganelli now claims his convictions for Unlawful Dissemination of Intimate Images and both counts of Stalking are against the weight and sufficiency of the evidence. Canganelli does not challenge his conviction of Harassment.

Initially, we note the weight of the evidence claim has been waived for failure to include the issue in the Rule 1925(b) statement of errors complained of on appeal. Our review of the certified record confirms that the trial court's order directing Canganelli to file a Rule 1925(b) statement informed him that any issues not included in the statement would be considered waived. Pa.R.A.P. 1925(b)(4)(vii) states,

Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

Pa.R.A.P. 1925(b)(4)(vii).

- 3 -

Although Canganelli raised his weight of the evidence claim in a post-trial motion, he did not include the issue in his Rule 1925(b) statement. Accordingly, pursuant to the directive of Rule 1925, the issue has been waived.

Next, Canganelli challenges the sufficiency of the evidence from the same crimes. Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Baumgartner***, 206 A.3d 11, 14 (Pa. Super. 2019) (citation omitted).

The elements of the crime of unlawful dissemination of intimate image are as follows:

> **(a) Offense defined.--**Except as provided in sections 5903 (relating to obscene and other sexual materials and performances), 6312 (relating to sexual abuse of children) and 6321 (relating to transmission of sexually explicit images by minor), a person commits the offense of unlawful dissemination of intimate image if, with intent to harass, annoy or alarm a

current or former sexual or intimate partner, the person disseminates a visual depiction of the current or former sexual or intimate partner in a state of nudity or engaged in sexual conduct.

18 Pa.C.S. § 3131(a)

Nudity is defined in section 5903[3] as,

(2) **"Nudity"** means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

18 Pa.C.S. § 5903(e).

The elements of the crime of stalking are as follows:

**(a) Offense defined.--**A person commits the crime of stalking when the person either:

(1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person; or

(2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S. § 2709.1(a)(b).

---

[3] Section 3131 specifically references the definition of "nudity" as found in section 5903(e).

Regarding Unlawful Dissemination, Canganelli asserts there was insufficient evidence to prove he intended to "harass, annoy, or alarm" K.H. and his stated intent was merely to get her attention. Further, there was insufficient evidence to prove he actually disseminated the images. Both claims fail.

We note that intent is often proved through circumstantial evidence.

> As intent is a subjective frame of mind, it is of necessity difficult of direct proof[.][W]e must look to all the evidence to establish **intent**, including, but not limited to, appellant's conduct as it appeared to his eyes [.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

***Commonwealth v. Roche***, 783 A.2d 766, 768 (Pa. Super. 2001).

Here, K.H. testified Canganelli told her he used intimate photographs of women, such as he had surreptitiously taken of her, for blackmail purposes. Certainly, such a statement can be viewed as intending to cause alarm. Further, Canganelli was told by both K.H. and the police that she no longer wanted any contact from him. Nevertheless, Canganelli continued to post intimate photos of K.H. as well as a variety of memes[4] directed to personal health issues she had as well as some addressing stalking. All these actions, viewed in the light most favorable to the Commonwealth as verdict winner,

---

[4] In the notes of testimony, these are referred to as MIMES. Although the memes do not depict K.H. in intimate poses, we believe these are relevant in the totality of the evidence to demonstrate Canganelli's ill intent.

are sufficient to prove Canganelli's intent to harass K.H and cause her annoyance and/or alarm.

The second aspect of this argument is there was insufficient proof Canganelli disseminated the images. The evidence clearly proved that Canganelli posted intimate photographs of K.H. on the internet, which were accessible to virtually anyone with internet access. Canganelli's assertion that there was insufficient evidence to prove he disseminated the images is meritless. Canganelli is not entitled to relief on this claim.

Canganelli's arguments regarding both counts of Stalking are identical; he argues the Commonwealth did not present sufficient evidence to prove his intent to cause K.H. substantial emotional distress as required by statute. The claim fails for the same reasons his prior claim regarding intent failed. In addition to the actions related above, we also note K.H.'s testimony:

> It was in May after we stopped, after I stopped communicating with him, he continued to pursue me daily. He sat outside my home. He contacted my work. He would call me from a blocked number sometimes 30 times in a day repeatedly. It was my work phone so I was unable to use my work phone. I just got to a point where I felt it was not going to go away and it seemed to be getting progressively more and more often.

N.T. Trial, 12/8/2017 at 39.

Additionally, K.H. testified,

> I received a friend request on Facebook from a Julie Clayton account. When I clicked on the account it was photos of me. I do not recall at that time if it was the pink underwear for the profile or if the naked photo for the profile but I do recall recognizing myself on the account immediately. I was at work. I was hysterical. My boss allowed me to discontinue work for the day.

- 7 -

The account changed I felt by the second. Every time I looked there was something new.

*Id.* at 41.

Further,

That is another photo on the account of the pink panties on the wall[5] and the profile picture again is me standing in the doorway [fully undressed] with a pig snout over my genitals and below that is the photo again of me laying in bed [fully undressed with a pig snout superimposed over her genitals].

*Id.* at 49.

Finally,

This is on Saturday, May 23, 2016 at 1:59 p.m. He had added to the Julie Clayton account several MIMEs [memes]. I had put for my profile stalking is a felony and he had added this to the Julie Clayton account that it's only stalking if you get caught. Another [meme] on the profile was people think stalkers are creepy but if I had a stalker I would feel special. There is another [meme] that says this could be us which is a newspaper clipping stating I married my stalker but you keep calling the police. There is another [meme] that says one does not simply get rid of a stalker. I can't read the bottom.

*Id.* at 51-52.

Just as with the claim regarding Unlawful Dissemination, the evidence presented by the Commonwealth is clearly sufficient to prove circumstantially Canganelli's intent to cause substantial emotional distress as required by statute. Accordingly, Canganelli is not entitled to relief on this argument.

---

5 For those unfamiliar with Facebook, "profile" and "wall" as well as "cover" (not mentioned herein) are locations within an account where images and/or text may be displayed.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/19/2019</u>