J-S39036-19, J-S39037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DURANGO ANDERSON :
:
Appellant : No. 330 EDA 2018

Appeal from the Judgment of Sentence January 12, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006733-2014

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DURANGO ANDERSON :
:
Appellant : No. 331 EDA 2018

Appeal from the Judgment of Sentence January 12, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006734-2014

BEFORE:   GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED AUGUST 19, 2019**

Appellant Durango Anderson appeals the judgments of sentence entered by the Court of Common Pleas of Philadelphia on two dockets in which Appellant was convicted of rape, involuntary deviate sexual intercourse (IDSI), unlawful contact with a minor, and other sexual offenses in connection with his assault of two of his daughters.  Appellant challenges the sufficiency

_____
\*   Former Justice specially assigned to the Superior Court.

and weight of the evidence supporting his convictions and claims the trial court erred in refusing to grant a mistrial. We affirm.

Appellant was charged with aforementioned offenses after his stepdaughter, S.S., his biological daughter, H.A., and his stepgranddaughter, S.S.W. came forward with allegations that Appellant had sexually assaulted them.[1] In September 2017, Appellant proceeded to a jury trial at which the following factual background was developed.

Appellant's stepdaughter, S.S., testified that Appellant sexually abused her over a five-year period, beginning in 2003 when she was approximately nine years old, and continuing until 2008, when she was fourteen years old. S.S. recalled that Appellant first assaulted her when she lived with her mother, W.S., and her siblings at a home near 32nd and Diamond Streets in Philadelphia.[2] On that day, Appellant waited until W.S. was not home and rubbed S.S.'s chest and the top of her underwear. Notes of Testimony (N.T.), 9/25/17, at 35-40.

---

[1] The charges against Appellant related to his sexual assault of S.S. were docketed at CP-51-CR-0006733-2014; his appeal of his convictions of those charges was docketed at 330 EDA 2018. The charges against Appellant related to his sexual assault of H.A. were docketed at CP-51-CR-0006734-2014; his appeal of his convictions of those charges was docketed at 331 EDA 2018. As Appellant's arguments in the separate appeals are identical, we address the appeals together.

[2] W.S. is the biological mother of A.S. (S.S.W.'s mother), S.S., and H.A. Appellant is the biological father of H.A. N.T. 9/21/17, at 59, 73, 80. W.S. and Appellant also have other children who are not involved in this case.

S.S. indicated that Appellant's next assault occurred when she was ten years old after her family moved to a home at 26th and Indiana Streets that Appellant had purchased. After S.S. fell asleep in the living room on one evening, she awoke to find Appellant touching her vagina with his tongue. Although S.S. felt disgusted, she pretended like "nothing ever happened." On a different occasion, Appellant put his finger in S.S.'s vagina. N.T. 9/25/17, at 36, 40-44, 48.

When asked why she did not report Appellant's behavior to an adult, S.S. explained that her mother was struggling with drug addiction and she did not want to jeopardize the relationship between Appellant and her siblings as Appellant was "the first man who came into our life and like showed us what a father was." N.T., 9/25/17, at 44.

In 2006, when S.S. approximately was eleven or twelve years old, Appellant isolated S.S. in his bedroom where he repeatedly forced his penis into S.S.'s mouth and ejaculated outside of it. To attempt to normalize his assaultive behavior, before he made S.S. participate in oral sex, he would tell S.S. he "loved" her "like a daughter" and would "talk [her] through" it. N.T. 9/25/17, at 44-46.

In 2007, when S.S. was approximately twelve or thirteen years old, Appellant and W.S. separated. However, S.S. and her siblings still continued to reside in Appellant's home at times during the school week to access an easier route to their school. S.S. recalled that on one occasion when she slept at Appellant's home, she awoke again to Appellant giving her oral sex.

Appellant then proceeded to insert his fingers and penis into her vagina. S.S. pretended to be asleep as she thought this would make the assault end sooner. N.T. 9/25/17, at 46-49.

In 2008, when S.S. was fourteen, she discovered she was pregnant and wondered if Appellant was the father of her child. Thereafter, one of Appellant's siblings told S.S. in W.S.'s presence that S.S. "need[ed] to tell mommy what [he is] doing to you." S.S. felt she could not report Appellant's abuse as he continued to be a "co-parent" for her and her siblings. Appellant asked S.S. to keep his behavior a "secret." N.T., 9/21/17, at 82-83, 112-14; N.T., 9/25/17, at 48-52, 56.

H.A., Appellant's biological daughter, testified that Appellant sexually abused her in 2012 or 2013 when she was six or seven years old. While Appellant and H.A.'s mother, W.S., had separated, they shared custody of H.A. and her two brothers. When the children stayed at Appellant's home on the 300 block of 26th Street in Philadelphia, H.A. indicated that she sometimes would sleep in Appellant's room as she had bad dreams. She remembered that Appellant had hovered over top of her and touched her vagina and buttocks through her pajamas while laughing. On another occasion, Appellant took an unclothed shower with H.A. and touched her buttocks. N.T., 9/21/17, at 4-14, 27-29, 71-76.

Appellant's granddaughter, S.S.W., frequently stayed overnight at Appellant's home while H.A. was there. S.S.W. was three years older than H.A. and would stay in H.A.'s bedroom as H.A. was often afraid to sleep alone.

S.S.W. testified that on one evening, she observed Appellant touching H.A.'s buttocks in his bed. S.S.W. indicated that Appellant had touched her own buttocks in the same way. N.T., 9/21/17, at 32, 38-46, 55.

In February 2014, school personnel observed H.A. and a male classmate participating in inappropriate dancing during music class. After this incident, a teacher who mentored H.A. asked if H.A. had any problems at home. H.A. confided in this teacher about Appellant's abuse; H.A. indicated that she had a close relationship with the teacher, felt comfortable talking to her, and knew the teacher would help her. Thereafter, H.A.'s mother, the Philadelphia Police Department, and the Department of Human Services (DHS) were notified of H.A.'s allegations. On February 19, 2014, H.A. submitted to a videotaped interview by a social worker at the Philadelphia Children's Alliance (PCA). N.T., 9/21/17, at 9-17, 63, 73-77 84-85.

At that time, S.S., who was now twenty years old, found out that H.A.'s school had contacted W.S. with an emergency situation. In an attempt to get the details about what had happened, S.S. called Appellant. While Appellant initially denied having any information, he subsequently asked S.S., "should I turn myself in?" Thereafter, S.S. began to surmise that "[s]omething was going on" between Appellant and her younger sister. N.T., 9/25/17, at 49.

As a result, S.S. felt she had "no choice" but to break her silence and report to a DHS social worker that Appellant had abused her years earlier. Now that her "little sister [was] involved," S.S. testified that she "kn[e]w how [the abuse] affected [her] and how it was going to effect [H.A.]." S.S.

- 5 -

expressed regret for not reporting her abuse earlier, stating "if I could have told before, I would have to prevent [the abuse of H.A.]." Thus, on March 5, 2014, S.S. made a statement to the Philadelphia Police Department Special Victims Unit. Thereafter, S.S. agreed to allow the officers to administer a paternity test for her son that was born in November 2008, which revealed that Appellant was not his father. Soon thereafter, S.S. and her older sister, A.S., who was S.S.W.'s mother, brought S.S.W. to the police to give a statement as well. N.T., 9/25/17, at 37, 44, 49-53.

After Appellant learned of the allegations, he wrote a series of letters to the mothers of the child complainants, begging for their forgiveness. In a letter to A.S. (S.S.W.'s mother and S.S. and H.A.'s sister), Appellant indicated that he was "no longer in a state of denial" and asked for her forgiveness. He told A.S. that he "miss[ed] his children dearly" and that "it hurts that [he] let them down and fell hard on [his] face." In a letter to W.S. (Appellant's wife and S.S. and H.A.'s mother), he characterized himself as "despicable, sick, and downright nasty," and admitted he had "committed injustice." Appellant promised that he was "working on [himself], trying to solve [his] illness, [his] sickness, and affliction." Appellant asked W.S. to believe that it was "never too late to learn to control our desires, our tongue, the need to control our limbs" and to gain "real self-discipline." N.T. 9/21/17, at 78-81, 84.

Appellant proceeded to a jury trial, at which the prosecution presented the testimony of the three child victim/witnesses (S.S., H.A., and S.S.W.) and their mothers (W.S. and A.S.). On September 27, 2017, the jury convicted

Appellant of charges on two separate dockets. With respect to his abuse of S.S. (docket at CP-51-CR-0006733-2014), the jury found Appellant guilty rape, IDSI with a person less than sixteen years old, unlawful contact with a child, and aggravated indecent assault of a child less than thirteen years old. With respect to his abuse of H.A. (docket at CP-51-CR-0006734-2014), the jury found Appellant guilty of unlawful contact with a minor, indecent assault of a person under the age of 13, and endangering the welfare of a child. With respect to S.S.W., the jury acquitted Appellant of charges related to S.S.W.'s claim that he touched her buttocks inappropriately.

On January 12, 2018, the trial court sentenced Appellant to fourteen to twenty-eight years' imprisonment to be followed by ten years' state supervised probation.[3] Appellant did not file a post-sentence motion, but instead filed this timely appeal.

Appellant raises the following issues for our review:

1) Whether the verdict [was] against the weight and sufficiency of the evidence when the complainants and witnesses contradicted themselves?

2) Whether the trial court erred in denying the defense's request for a mistrial when a Commonwealth witness testified to prior and similar bad acts by Appellant despite a pretrial ruling from the trial court not to do so.

Appellant's Brief, at 5.

_____

[3] We note that Appellant's prior record score placed him in the repeat felony offender range ("REFEL").

- 7 -

Our standard of review for a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

> *Commonwealth v. Leaner*, 202 A.3d 749, 768, (Pa.Super. 2019) (citation omitted). To reiterate, the jury, as the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). In conducting review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. *Id.* at 39-40.

*Commonwealth v. Baumgartner*, 206 A.3d 11, 14–15 (Pa.Super. 2019).

Appellant was convicted of rape, IDSI with a person less than sixteen years old, two counts of unlawful contact with a child, and aggravated indecent assault of a child less than thirteen years old, indecent assault of a person

under the age of 13, and endangering the welfare of a child. Appellant does not argue that the prosecution failed to satisfy the elements of any of the crimes of which he was convicted. Instead, he baldly asserts that the Commonwealth was required to present physical evidence to support the victims' testimony. However,

> [t]his Court has long-recognized that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." *Commonwealth v. Davis*, 437 Pa.Super. 471, 650 A.2d 452, 455 (1994). "If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa.Super. 2000) (citation omitted).

*Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006). Accordingly, we find Appellant's sufficiency claim to be meritless.

Appellant also claims the trial court should not have credited the victims' testimony, which he characterized as contradictory. This argument goes to the weight of the evidence. However, we note that:

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super.2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Sherwood*, [603 Pa. 92], 982 A.2d 483, 494 (Pa.2009).

*Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa.Super. 2014) (quoting *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super.2012)). As Appellant did not raise this claim before the trial court and attempts to

- 9 -

challenge the weight of the evidence for the first time on appeal, we find this issue to be waived.

Lastly, Appellant argues that the trial court should have granted his request for a mistrial. We are guided by the following standard:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

***Commonwealth v. Jaynes***, 135 A.3d 606, 615 (Pa.Super. 2016) (citation omitted).

Appellant specifically argues that he is entitled to a mistrial based on the testimony of witness, W.S., S.S. and H.A.'s mother. We note that defense counsel actually elicited the improper testimony on cross-examination. The relevant testimony is as follows:

> [Defense counsel:] So at that point, you didn't even want to speak to [Appellant] anymore, correct?

- 10 -

[W.S.]:  Excuse me?

[Defense counsel:] You didn't want to speak to [Appellant] anymore, correct?

[W.S.]:  I didn't want to speak to him?  I spoke to [Appellant]. We've always spoke.

[Defense counsel:] Right.  But after this happened, something – this made you really mad, correct, hearing this from your daughter?

[W.S.]:  With [H.A.]?

[Defense counsel:] Yeah.

[W.S.]:  They didn't – yes, it made me mad because he promised he would never do it again after he did it to my own children and I believed him.

N.T., 9/21/17, at 86-87.  At that point, defense counsel asked for a sidebar and moved for a mistrial, arguing that W.S. had improperly discussed allegations of sexual abuse by Appellant of yet another child, N.M., that was not before the Court.

Our Supreme Court has emphasized that "[i]n general, a party may not object to improper testimony which he himself elicits." ***Commonwealth v. Puksar***, 559 Pa. 358, 372, 740 A.2d 219, 227 (1999) (quoting ***Commonwealth v. Yarris***, 519 Pa. 571, 549 A.2d 513, 525 (1988)). The trial court pointed out that defense counsel himself had elicited this response by pressing W.S. about her emotional response to H.A.'s allegation. When the trial court offered to give a curative instruction to the jury and cautioned that defense counsel may not want to highlight this testimony, defense counsel declined the trial court's offer for a curative instruction.

- 11 -

In addition, Appellant has not shown that the challenged comment was so prejudicial as to deprive him of a fair and impartial trial. W.S.'s reference to her anger with Appellant for abusing her daughter was vague and did not name which daughter she was referring to in this statement. As Appellant was already on trial for abusing two of W.S.'s daughters and her granddaughter, Appellant did not establish that the jury understood W.S.'s statement to reveal that another one of Appellant's daughters had accused him of sexual abuse. The jury could have reasonably inferred that W.S. was talking about the allegations of abuse made by S.S., as Appellant's abuse of S.S. occurred before his abuse of H.A.

Moreover, Appellant's claim that the trial court should have given a curative instruction is baseless as the record clearly showed that the trial court offered to give a curative instruction, but defense counsel declined the trial court's offer. As such, we find that the trial court did not abuse its discretion in refusing to grant Appellant's request for a mistrial.

For the foregoing reasons, we affirm the judgments of sentence.

Judgments of sentence affirmed at both 330 EDA 2018 and 331 EDA 2018.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/19

- 12 -